| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Bruce G. Landau, Esq.   (SBN 71588)<br>LANDAU & LANDAU<br>11260 Overland Avenue, Ste. 14G<br>Culver City, CA 90230<br>Ph: (310) 838-1507<br>Fax: (310) 838-1365<br>bruce@landauandlandau.com<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>Jaime Mazur<br><br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:25-bk-10181-NB<br><br>CHAPTER: 11 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| | DATE: 10/21/2025<br>TIME:  1:00 p.m.<br>COURTROOM: 1545 |

| **Movant:**  Finance California, a California corporation |
|---|

1. **Hearing Location**:

   ☒ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701

   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367      ☐ 1415 State Street, Santa Barbara, CA 93101

   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4.   When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.   If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.   ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.   ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (date) _____ and (time) _____; and, you may appear at the hearing.

   a.   ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b.   ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c.   ☐ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  09/23/2025

LANDAU & LANDAU
Printed name of law firm (if applicable)

Bruce G. Landau, Esq.
Printed name of individual Movant or attorney for Movant


/s/ Bruce G. Landa, Esq.
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                              Page 2                                    F 4001-1.RFS.RP.MOTION

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*: 1811 Bel Air Road
   *Unit/suite number*:
   *City, state, zip code*: Los Angeles, CA 90077

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit __2__): Deed of Trust recorded on 10/30/2023 as document # 20230741554 in Los Angeles County, California.

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter ☐ 7 ☒ 11 ☐ 12 ☐ 13 was filed on (*date*) __01/10/2025__.

   b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13  was entered on (*date*) _____.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☒ Movant's interest in the Property is not adequately protected.

      (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

      (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

      (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☐ The bankruptcy case was filed in bad faith.

      (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

      (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

      (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

      (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

      (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

      (F) ☒ Other (*see attached continuation page*).

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                Page 3                          **F 4001-1.RFS.RP.MOTION**

(3) ☐ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____, which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

(1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

(2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other *(specify)*:

6. **Evidence in Support of Motion:  (D***eclaration(s) MUST be signed under penalty of perjury and attached to this motion***)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

d. ☒ Other:
Exhibit 1: Note Secured by Deed of Trust, Exhibit 2: Recorded Deed of Trust, Exhibit 3: Broker Price Opinion, Exhibit 4: Title Report

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                   Page 4                          **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☒ 11 U.S.C. § 362(d)(1)  ☐ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☒ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date:  09/23/2025

LANDAU & LANDAU
_____
Printed name of law firm (*if applicable*)
 Bruce G. Landau, Esq.
_____
Printed name of individual Movant or attorney for Movant

/s/ Bruce G. Landau, Esq.
_____
Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                    Page 5                    **F 4001-1.RFS.RP.MOTION**

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) Bruce G. Landau, Esq. _____ , declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age.  I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

    a.  ☐  I am the Movant.

    b.  ☒  I am employed by Movant as (*state title and capacity*): Bankruptcy Counsel

    c.  ☐  Other (*specify*):

2.  a.  ☐  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property.  I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant.  These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☐  Other (*see attached):*

3.  The Movant is:

    a.  ☒  Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.  A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit 1_____.

    b.  ☒  Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary.  True and correct copies of the recorded security instrument and assignments are attached as Exhibit 2_____.

    c.  ☐  Servicing agent authorized to act on behalf of the:

        ☐  Holder.
        ☐  Beneficiary.

    d.  ☐  Other (*specify):*

4.  a.  The address of the Property is:

        *Street address*: 1811 Bel Air Road
        *Unit/suite no.*:
        *City, state, zip code*: Los Angeles, CA 90077

    b.  The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
        See attached Exhibit 2 for legal description.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 6                          **F 4001-1.RFS.RP.MOTION**

5. Type of property (*check all applicable boxes*):

    a. ☒ Debtor's principal residence      b. ☐ Other residence
    c. ☐ Multi-unit residential      d. ☐ Commercial
    e. ☐ Industrial      f. ☐ Vacant land
    g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

    a. ☒ Sole owner

    b. ☐ Co-owner(s) (*specify*):

    c. ☐ Lienholder (*specify*):

    d. ☐ Other (*specify*):

    e. ☒ The Debtor ☒ did ☐ did not list the Property in the Debtor's schedules.

    f. ☐ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☐ trust deed.

        The deed was recorded on (*date*) _____.

7. Movant holds a ☐ deed of trust ☐ judgment lien ☐ other (*specify*) _____
that encumbers the Property.

    a. ☒ A true and correct copy of the document as recorded is attached as Exhibit _2___.

    b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit _1___.

    c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit _____.

8. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 679,391.25 |
| b. | Accrued interest: | $ | $ | $ |
| c. | Late charges | $ | $ | $ |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[　　　　] | $[　　　　] | $[　　　　] |
| g. | TOTAL CLAIM as of (*date*): | $ | $ | $ 679,391.25 |

    h. ☒ Loan is all due and payable because it matured on (*date*) _09/30/2024_

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

    a. Notice of default recorded on (*date*) _12/31/2024_ or ☐ none recorded.

    b. Notice of sale recorded on (*date*) _____ or ☒ none recorded.

    c. Foreclosure sale originally scheduled for (*date*) _____ or ☒ none scheduled.

    d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

    e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

    f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*      Page 7      **F 4001-1.RFS.RP.MOTION**

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

   a. Amount of current monthly payment as of the date of this declaration: $_____ for the month of _____ 20___.

   b. Number of payments that have come due and were not made: _____. Total amount: $ 679,391.25

   c. Future payments due by time of anticipated hearing date (*if applicable*):

   An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

   d. The fair market value of the Property is $ 2,500,000.00_____, established by:

   (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

   (2) ☒ A real estate broker or other expert's declaration regarding value is attached as Exhibit 3____.

   (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

   (4) ☐ Other (*specify*):

   e. **Calculation of equity/equity cushion in Property:**

   Based upon ☒ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | U.S. Bank | $ | $ 2,549,397.00 |
| 2nd deed of trust: | Finance California | $ | $ 679,391.25 |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | Franchise Tax Board | $ | $ 166,857.68 |
| Other: | | $ | $ |
| **TOTAL DEBT: $ 3,395,645.93** | | | |

   f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit 4____ and consists of:

   (1) ☒ Preliminary title report.

   (2) ☐ Relevant portions of the Debtor's schedules.

   (3) ☐ Other (*specify*):

   g. ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
   I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ 0.00_____ and is 0.00____% of the fair market value of the Property.

   h. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
   By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ -895,645.93_____.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                      Page 8                      **F 4001-1.RFS.RP.MOTION**

i. ☒ Estimated costs of sale: $ 200,000.00          (estimate based upon  8    % of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☐ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                    $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                                           $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:                   $[                    ]

TOTAL POSTPETITION DELINQUENCY:        $

g. Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):

$_____ received on (*date*) _____
$_____ received on (*date*) _____
$_____ received on (*date*) _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B).  More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property.  A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is  ☐ prepetition  ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

   a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☐ The Debtor filed only a few case commencement documents.  Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☐ Other (*specify*):



18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☐ Multiple bankruptcy cases affecting the Property include:

      1. Case name: _____
         Chapter: _____    Case number: _____
         Date dismissed: _____    Date discharged: _____    Date filed: _____
         Relief from stay regarding the Property ☐ was  ☐ was not  granted.

      2. Case name: _____
         Chapter: _____    Case number: _____
         Date dismissed: _____    Date discharged: _____    Date filed: _____
         Relief from stay regarding the Property ☐ was  ☐ was not  granted.

      3. Case name: _____
         Chapter: _____    Case number: _____
         Date dismissed: _____    Date discharged: _____    Date filed: _____
         Relief from stay regarding the Property  ☐ was  ☐ was not  granted.

   ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

   ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 10                                    **F 4001-1.RFS.RP.MOTION**

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


| 09/23/2025 | Bruce G. Landau, Esq. | *Bruce G Landau* |
| --- | --- | --- |
| *Date* | *Printed name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                Page 11                    **F 4001-1.RFS.RP.MOTION**

Debtor: Jaime Mazur                                                    BK Case: 2:25-bk-10181-NB

CONTINUATION PAGE

**CONTINUATION PAGE TO FINANCE CALFORNIA'S NOTICE OF MOTION AND**

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**

4. Grounds for Relief from Stay:

(F) Other – Because of Debtor's missed adequate protection payments and the Debtor's

failure to sell the property within a reasonable amount of time, cause exists under 11 U.S.C.

§§ 362(d)(1), and 362(d)(2) to grant Movant relief from the automatic stay.

**CONTINUATION PAGE TO MOTION FOR RELIEF FROM STAY**

# EXHIBIT 1

## NOTE SECURED BY DEED OF TRUST

U.S. $575,000.00                                    Dated as of October 17, 2023

Borrower:        **Jamie Mazur**

Lender:          **Finance California**

1.    **LOAN AMOUNT**

    In return for a loan that **Jamie Mazur**, a single man ("Borrower" or "Trustor") has received (the "Loan"), the Borrower promises to pay **Five Hundred Seventy Five Thousand and No/100 Dollars (U.S. $575,000.00)** plus interest thereon and other sums referred to herein, to the order of **Finance California**, a California corporation, or its assignees (the "Lender"). The Borrower understands that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.    **MATURITY DATE; INTEREST RATE**

    This Note, including without limitation the entire advanced but unpaid principal balance hereof, together with interest and any late payment charges or other reasonable and out-of-pocket costs accrued and unpaid, shall be all due and payable on September 30, 2024 (the "Maturity Date"). The unpaid principal balance of this Note shall bear interest from the date funds are first funded or deposited by Lender into the escrow established to fund the loan evidenced by this Note ("Funding Date") at a per annum interest rate equal to the thirteen percent (13%); provided however, that the applicable rate may be increased as hereinafter provided.

3.    **PAYMENTS**

    **(a)**    **Advance Payment of Interest:**

    The interest payable for the term of the Loan in the amount of $74,750.00 shall be paid by Borrower upon the funding of this Note ("Prepaid Interest"), shall be debited from the Account defined in Section 3.1 of the Building Loan Agreement executed concurrently herewith. Fifty percent (50%) of the Prepaid Interest is the minimum earned interest, fully earned by Lender and non-refundable to Borrower upon the funding of this Note (the "Fixed Yield"), and shall be paid to Lender upon the funding of this Loan.

    **(b)**    **Principal Payment at Maturity:**

    The entire outstanding principal balance of this Note, together with all accrued but unpaid interest thereon and any other charges described under this Note shall be due and payable on the Maturity Date.

THIS IS TO CERTIFY THAT THIS IS A TRUE
AND CORRECT COPY OF THE ORIGINAL

FIDELITY NATIONAL TITLE

By _____

(c)    **Payment Address:**

Unless notified by Lender in writing to the contrary, the Borrower shall make all payments to Finance California:

Finance California
15604 Vandorf Place
Encino, California 91436
Attn: Jason Wiener

or at a different place if required by the Note Holder.  Principal and charges are payable in certified or readily available funds of lawful money of the United States.

(d)    **Payment of Fees:**

As a condition precedent to the making of the Loan and any advances thereunder, Borrower shall pay to Lender all reasonable and out-of-pocket fees and costs associated with the origination, documentation and maintenance of this Loan, including but not limited to,  the loan origination fee in the amount of $23,000.00, escrow costs, title insurance costs, and all legal fees associated with the documentation of the Loan.  Any additional costs or fees incurred after execution of the Note must be paid by Borrower upon demand from Lender.

## 4.    DEFAULT INTEREST RATE

If and so long as any default exists under this Note or any other Loan Document, every sum payable pursuant hereto shall bear interest, and the interest rate thereon, and on any judgment obtained for the collection of this Note, shall from and after the date of default, be a rate equal to twenty five percent (25%) per annum (the "Default Rate").  Borrower hereby acknowledges that the actual damage Lender shall sustain as a result of such a default by Borrower is extremely difficult to estimate, and the Default Rate represents a reasonable approximation of the same and bears a reasonable relationship to the customary costs incurred by asset-based lenders who are confronted with one or more defaults by a borrower.

*Borrower's Initials:* _____

## 5.    MATURITY LATE CHARGE

In the event the principal balance and all other sums due hereunder are not paid on or before the Maturity Date or on the date of an Acceleration (as the case may be) (which date shall be extended to the following business day as the result of it occurring on a weekend or holiday), Borrower shall pay, in addition to interest at the Default Rate, a late charge (the "Maturity Late Charge") equal to five percent (5%) of the outstanding balance of the Loan.  Borrower hereby acknowledges that the actual damage Lender shall sustain as a result of Borrower's failure to repay all sums due under this Note on or before its stated Maturity Date or the date of an Acceleration (as the case may be) is extremely difficult to estimate and that the Maturity Late Charge represents a reasonable approximation of the same and bears a reasonable relationship to the customary costs (which include, without limitation, the interest and fees that could be earned from reinvestment) incurred by asset based lenders who do not receive payment of

THIS IS TO CERTIFY THAT THIS IS A TRUE
AND CORRECT COPY OF THE ORIGINAL

FIDELITY NATIONAL TITLE

By _____

7.    **PREPAYMENT**

(a)    This Note may be prepaid in part or in whole at any time; however, to the fullest extent permitted by law, a prepayment charge will be imposed on any amount prepaid, which charge will equal the Fixed Yield that Lender has received. Any payment of principal made under this Note by reason of an Acceleration shall be deemed a prepayment subject to the foregoing charge.

(b)    BORROWER HEREBY EXPRESSLY (A) AGREES THAT CALIFORNIA CIVIL CODE SECTION 2954.9(b) IS INAPPLICABLE BECAUSE THE PROPERTY IS NOT OWNER-OCCUPIED, (B) WAIVES ANY RIGHTS IT MAY HAVE UNDER CALIFORNIA CIVIL CODE SECTION 2954.10 TO PREPAY THIS NOTE, IN WHOLE OR IN PART, WITHOUT PENALTY OR PREMIUM, UPON ACCELERATION OF THE MATURITY DATE OF THE NOTE, AND (C) AGREES THAT IF, FOR ANY REASON, A PREPAYMENT IN EXCESS OF 20 PERCENT OF THE UNPAID BALANCE IS MADE, WHETHER VOLUNTARY OR INVOLUNTARY, OR UPON OR FOLLOWING ANY ACCELERATION OF THE MATURITY DATE OF THE NOTE BY LENDER ON ACCOUNT OF ANY DEFAULT BY BORROWER UNDER ANY LOAN DOCUMENT, INCLUDING BUT NOT LIMITED TO ANY TRANSFER OR DISPOSITION AS PROHIBITED OR RESTRICTED BY SECTION 5.1 OF THE DEED OF TRUST (DEFINED BELOW), THEN BORROWER SHALL BE OBLIGATED TO PAY THE PREPAID INTEREST AS PROVIDED IN SECTION 3(a) ABOVE.  BY INITIALING THIS PROVISION IN THE SPACE PROVIDED BELOW, BORROWER AGREES THAT LENDER'S AGREEMENT TO MAKE THE LOAN EVIDENCED BY THIS NOTE AT THE INTEREST RATE AND FOR THE TERM SET FORTH IN THE NOTE CONSTITUTES ADEQUATE CONSIDERATION, GIVEN INDIVIDUAL WEIGHT BY BORROWER FOR THIS WAIVER AND AGREEMENT. BORROWER HEREBY ACKNOWLEDGES THAT IN THE EVENT OF A PREPAYMENT IN EXCESS OF 20 PERCENT OF THE UNPAID BALANCE, LENDER'S COSTS AND DAMAGES WILL BE DIFFICULT TO ASCERTAIN. BORROWER AGREES THAT THE PREPAYMENT PREMIUM REPRESENTS A FAIR AND REASONABLE ESTIMATE OF THE COSTS AND DAMAGES THAT THE LENDER WILL INCUR BY REASON OF SUCH PREPAYMENT.

*Borrower's Initials:*

8.    **MAXIMUM CHARGES; USURY**

It is the specific intent of Borrower and Lender that this Note bear a lawful rate of interest, and at no time is Borrower required to pay interest on the Loan or on any other payment due hereunder or under any of the other Loan Documents (as defined below), or to make any other payment deemed by law or by a court of competent jurisdiction to be interest, at a rate which would subject Lender either to civil or criminal liability as a result of being in excess of the maximum interest rate which Borrower is permitted by applicable law to pay.  If interest (or such other amount deemed to be interest) paid or payable by Borrower is deemed to exceed such maximum rate, then the amount to be paid immediately shall be reduced to such maximum rate and thereafter computed at such maximum rate. All previous payments in excess of such maximum rate shall be deemed to have been payments of principal (in inverse order of maturity) and not on account of interest due hereunder.  For purposes of determining whether any applicable usury law has been violated, all payments deemed by law or a court of competent jurisdiction to be interest shall, to the extent permitted by applicable law, be deemed to be amortized, prorated, allocated and spread over the full term of the Loan in such manner so that interest is computed at a rate throughout the full term of the Loan which does not exceed the maximum lawful rate of interest.  In

THIS IS TO CERTIFY THAT THIS IS A TRUE
AND CORRECT COPY OF THE ORIGINAL

FIDELITY NATIONAL TITLE

By 

addition to the foregoing, Borrower acknowledges that the Loan was arranged by Lender, a licensed real estate broker (DRE License No. 01252748). Accordingly, this Loan is thereby intended to be exempt from the provisions of the applicable usury law.

## 9.    LEGISLATION AFFECTING NOTE HOLDER'S RIGHTS

If enactment or expiration of any applicable laws or regulations has the effect of rendering any provision of the Note or the Deed of Trust executed concurrently herewith relating to payment of interest or principal, defaults, or transfer of the Property unenforceable according to its terms, the Note Holder, at its option, may require immediate payment in full of all sums secured by the Deed of Trust and may invoke any remedies permitted herein.

## 10.    BORROWER'S DEFAULT

### (a)    Events of Default:

The Borrower will be in default if any of the following occurs:

(i)    The Borrower fails to make any payment or deposit of funds when due;

(ii)    The Borrower fails to immediately pay in full all of the reasonable and out-of-pocket costs and expenses incurred by the Note Holder in enforcing this Note;

(iii)    The Borrower breaks any written promise the Borrower has made to the Note Holder, or the Borrower fails to perform promptly at the time and strictly in the manner provided in this Note or any agreement related to this Note, including without limitation the Building Loan Agreement, and any and all of the other Loan Documents, or in any other agreement or loan the Borrower has with the Note Holder and fails to cure such breach within thirty (30) days of Lender's notice thereof;

(iv)    The Borrower fails to provide any information required by the Note Holder, including without limitation (a) an unaudited income statement (which includes a complete statement of all income and expenses) for the prior fiscal/calendar year, or the tax return for the prior fiscal/calendar year, including all schedules pertaining to the Property; and (b) any other information relating to the Property which may be reasonably requested by the Note Holder, or as may be required under the Building Loan Agreement, within twenty (20) days of the date required or requested;

(v)    Any representation or statement made or furnished to the Note Holder by the Borrower or on the Borrower's behalf is false or misleading in any material respect;

(vi)    A petition in bankruptcy is filed by or against Borrower (and, if filed against Borrower, is not discharged within thirty (30) calendar days of the date of such filing) or a receiver, custodian, liquidator, sequestrator, trustee, or other similar official of any property of Borrower, is appointed, or Borrower makes an assignment for the benefit of creditors, or Borrower becomes insolvent, or Borrower fails to pay his debts generally as they become due, or an attachment or execution is levied against any substantial portion of the Property, any of the

Improvements, or any other property of Borrower, or any of the above occurs in connection with a co-Borrower, accommodation Borrower, surety, or guarantor on or of the Note, Loan, or the Project;

(vii)    Any creditor tries to take any of the Borrower's property on or in which Note Holder has a lien or security interest. This includes a garnishment of any of the Borrower's accounts with Note Holder; and

(viii)    Any event or proceeding occurs which, in the sole discretion of the Note Holder, has a material adverse effect on the credit or financial condition of either the Borrower or the collateral securing this Note including, without limitation, any change in the financial condition of the Borrower as reflected in any financial information furnished to the Note Holder or otherwise that is materially adverse in the Note Holder's sole discretion.

**(b)    Rights of the Note Holder Upon Default:**

Upon default beyond any applicable notice and grace period, if any, Note Holder may declare the entire unpaid principal balance on this Note and all unpaid advances, fees, costs, and all accrued unpaid interest immediately due, without notice, and then the Borrower shall pay that amount. Upon the Borrower's failure to pay all amounts declared due pursuant to this Section, including failure to pay upon final maturity, the Note Holder, at its option, may also, if permitted under applicable law, do one or more of the following:

(i)    Add any unpaid advances, fees and costs to principal. The Borrower will pay the Note Holder that amount. This includes, subject to any limits under applicable law, the Note Holder's reasonable attorneys' fees and Note Holder's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services; and

(ii)    Further, in the event of default, the Note Holder shall be entitled to enforce all rights allowed by law or pursuant to the Deed of Trust, and any modifications or addenda thereto, including, without limitation and without waiver of any available remedy, filing an action against the Borrower, proceeding against any and all collateral via judicial and/or non-judicial foreclosure and/or seeking a deficiency judgment against the Borrower. All remedies shall be cumulative to the maximum extent permitted by law, and may be exercised singularly or concurrently.

**(c)    Notice of Default:**

In the event of default, beyond any applicable notice and grace period, if any, the Note Holder may, but is not required to, send the Borrower a written notice stating that if the Borrower does not correct the default by a certain date, the Note Holder may require immediate payment of the full amount of principal which has not been paid and all outstanding costs and fees. Failure to send such a notice shall not constitute a waiver of any default.

(d)    No Waiver By Note Holder:

Even if, at a time when the Note is in default, the Note Holder does not require immediate payment in full as described above, the Note Holder shall still have the right to do so as to any prior or subsequent defaults.

## 12.    WAIVERS

The Borrower hereby waives its rights of presentment, demand for payment, notice of dishonor, notice of nonpayment, notice of protest, and any and all other notices and demands in connection with the delivery, acceptance, performance, default, or enforcement of this Note, and the Borrower hereby waives the benefits of any statute of limitations with respect to any action to enforce, or otherwise related to, this Note.

## 13.    SECURITY

Without limitation, this Note is secured by the Deed of Trust on property located at 1811 Bel Air Road, Los Angeles, CA 90077, dated the same date as this Note (the "Deed of Trust"), and said Deed of Trust contains the following clauses (Sections 5.1, 7.8, and 8.2 thereof), which are incorporated herein:

"**Acceleration Clause: Right To Declare Sums Due**.

"5.1    Prohibition Against Further Encumbrances.

The Trustor is hereby prohibited from and agrees not to subject the Property or title thereto to any lien or charge, voluntary or involuntary, contractual or statutory, except as expressly set forth in Section 5.11.1 below, without the prior written consent of the Lender. The Trustor shall not pledge, hypothecate, lien, convey a security interest in, or encumber the Property or any interest therein or part thereof (including, without limitation, air rights and developmental rights), nor make any further assignment of Rents from the Property or any interest therein or part thereof, voluntarily or involuntarily, without the prior written consent of the Lender. The Lender's consent shall be granted or withheld at its sole and absolute discretion.

*    *    *

7.8    Alienation of Interests.

The alienation of any portion of the Trustor's interest in the Property including circumstances wherein:

(i)    The Trustor sells, enters into a contract of sale, conveys or alienates the Property or any part thereof, or suffers his title or any interest to be divested; or

(ii)    Whether voluntarily or involuntarily, the Trustor leases the Property or any part thereof for a term of more than one year, or changes or permits to be changed the character or use of the Property, or drills or extracts or enters into a lease for the drilling for or extracting of oil, gas or other hydrocarbon substance or any mineral of any kind or character on such Property.

*    *    *

11827A-NOTE (2023-2).doc                    6

8.2     Acceleration Clause: Right To Declare Sums Due.

The Lender shall have the right, at its option, to declare the indebtedness specified in the Note immediately due and payable without prior notice and regardless of any maturity date of the Note or any prior forebearings if:

(i)     The Trustor is in default in the performance of any of its obligations under the Note, this Deed of Trust or any of the other Loan Documents (as hereinafter defined); or

(ii)    An Event of Default has occurred; or

(iii)   The Trustor sells, enters into a contract of sale, conveys or alienates the Property or any part thereof, or suffers its title or any interest to be divested; or

(iv)    Whether voluntarily or involuntarily, the Trustor leases the Property or any part thereof, or changes or permits to be changed the character or use of the Property, or drills or extracts or enters into a lease for the drilling for or extracting of oil, gas or other hydrocarbon substance or any mineral of any kind or character on such Property; or

(v)     The Trustor has made any material misrepresentation or failed to disclose any material fact in those certain financial and other written representations and disclosures made by Trustor in order to induce the Lender to enter into the transaction evidenced by the Note which this Deed of Trust secures; or

(vi)    Any breach of the Trustor under the terms of any other agreement between the Trustor and the Lender that is not remedied within the applicable grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of the Trustor to the Lender, whether now existing or hereinafter created."

## 14.    ILLEGALITY OR INVALIDITY

Subject to Section 8 above, in the event any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable, the same shall not affect any other provision of this Note and the remaining provisions of this Note shall remain in full force and effect.

## 15.    ORAL MODIFICATION PROHIBITED

No waiver or modification of any of the terms or provisions of this Note shall be valid or binding unless set forth in a writing signed by a duly authorized officer of Note Holder, and then only to the extent therein specifically set forth.

16. **ENTIRE AGREEMENT**

This Note, together with the Building Loan Agreement, the Deed of Trust, the Indemnity Agreement, Construction Account Pledge Agreement, Disbursement Agreement, Assignment of Construction Contracts, Affidavit Concerning Business Purposes, and all other agreements executed contemporaneously herewith (collectively, the "Loan Documents") constitute the parties' entire agreement with respect to the subject matter hereof and supersede all agreements, representations, warranties, statements, promises, and understandings, whether oral or written, with respect to the subject matter herewith. None of the Loan Documents may be amended, altered, or modified except by a writing signed by a duly authorized officer of Note Holder.

17. **EXECUTION OF OTHER DOCUMENTS**

The Borrower shall execute any documents reasonably requested by the Note Holder in order to implement and effectuate the terms of the Loan Documents.

18. **MULTIPLE OBLIGORS**

If more than one person or entity signs this Note, each such person or entity is fully obligated to perform all the obligations and pay all amounts owed hereunder. The Note Holder may enforce its rights under this Note jointly or severally against all such persons or entities.

19. **JOINT PARTICIPATION**

The Borrower has materially participated in the preparation of the Loan Documents, which are a product of the joint effort and cooperation of the parties. In the event of any ambiguity or question relating to any provision of the Loan Documents, said ambiguity shall not be construed against any party.

20. **TRANSFER OF INFORMATION**

The Borrower agrees that the Note Holder may provide information relating to the Loan Documents to the Note Holder's parent, affiliates, subsidiaries and service providers, as well as to all credit reporting agencies.

21. **BENEFIT OF AGREEMENT**

Subject to Section 25 below, the parties agree that the rights and obligations arising out of the Loan Documents shall inure to the benefit of and be binding upon the heirs, personal representatives, successors and assignees of the Borrower and Lender.

22. **NOTICES**

Unless applicable law requires a different method, any notice which must be given to the Borrower will be given by delivering it or by mailing it by first class mail to the Borrower at the most current address given by the Borrower to the Note Holder.

### 23.    WAIVER OF RIGHT TO JURY TRIAL/ REFEREE

(a)    Any controversy, dispute or claim between the Lender and undersigned based upon, arising out of, or in any way relating to: (i) this Note or any supplement or amendment thereto; or (ii) any other present or future instrument or agreement between the parties hereto; or (iii) any breach, conduct, acts or omissions of any of the parties hereto or any of their respective directors, officers, employees, agents, attorneys or any other person affiliated with or representing any of the parties hereto; in each of the foregoing cases, whether sounding in contract or tort or otherwise (a "Dispute") shall be resolved exclusively by a judicial reference in accordance with Sections 638 et seq. of the California Code of Civil Procedure ("CCP") and Rules 3.900-3.907 of the California Rules of Court ("CRC"), subject to the following terms and conditions. (All references in this section to provisions of the CCP and CRC shall be deemed to include any and all successor provisions.)

(b)    The reference shall be a consensual general reference pursuant to CCP Sections 638 and 644(a). Unless the parties otherwise agree in writing, the reference shall be to a single referee. The referee shall be a retired Judge of the Los Angeles County Superior Court or a retired Justice of the California Court of Appeals or California Supreme Court. Notwithstanding anything to the contrary herein, nothing in this Note shall be construed to limit the right of a party, pending appointment of the referee, to seek and obtain writ of attachment, writ of possession, appointment of a receiver, temporary restraining order and/or preliminary injunction, or similar provisional remedy, or proceed with a non-judicial foreclosure.

(c)    Within fifteen (15) days after a party gives written notice in accordance with this Note to all other parties to a Dispute that the Dispute exists, all parties to the Dispute shall attempt to agree on the individual to be appointed as referee. If the parties are unable to agree on the individual to be appointed as referee, the referee shall be appointed, upon noticed motion or ex parte application by any party, by the Los Angeles County Superior Court ("Superior Court") in accordance with the CCP Section 640, subject to all rights of the parties to challenge or object to the appointment, including without limitation the right to peremptory challenge under CCP Section 170.6. If the referee (or any successor referee) appointed by the Superior Court is unable, or at any time becomes unable, to serve as referee in the Dispute, the Superior Court shall appoint a new referee as agreed to by the parties or, if the parties cannot agree, in accordance with CCP Section 640, which new referee shall then have the same powers, and be subject to the same terms and conditions, as the predecessor referee.

(d)    Venue for all proceedings before the referee, and for any Superior Court proceeding for the appointment of the referee, shall be exclusively within the County of Los Angeles, State of California. The referee shall have the exclusive power to determine whether a Dispute is subject to judicial reference pursuant to this Section. Trial, and all proceedings and hearings on dispositive motions, conducted before the referee shall be conducted in the presence of, and shall be transcribed by, a court reporter, unless otherwise agreed to in writing by all parties to the proceeding. The referee shall issue a written statement of decision, which shall be subject to objections of the parties pursuant to CRC Rule 3.1590 as if the statement of decision were issued by the Superior Court. The referee's powers include, in addition to those set forth in CCP Sections 638, et seq., and CRC Rules 3.900-3.907, (i) the power to grant provisional relief, including without limitation writ of attachment, writ of possession, appointment of a receiver, temporary restraining order and/or preliminary injunction, and (ii) the power to hear and resolve all post-trial matters in connection with the Dispute that would otherwise be determined by the Superior Court, including without limitation motions for new trial, reconsideration, to vacate judgment, to stay execution or enforcement, to tax costs, and/or for attorneys' fees to the prevailing party or parties. The parties shall, subject to the referee's power to award attorneys' fees and

costs to the prevailing party, bear equally the costs of the referenced proceeding, including without limitation the fees and costs of the referee and the court reporter.

        (e)    The parties acknowledge that (i) the referee alone shall determine all issues of fact and/or law in the Dispute, without jury, (ii) the referee does not have the power to empanel a jury, (iii) the Superior Court shall enter judgment on the decision of the referee pursuant to CCP Section 644(a) as if the decision were issued by the Superior Court, (iv) the decision of the referee shall not be subject to review by the Superior Court, and (v) the decision of the referee, once entered as a judgment by the Superior Court, shall be binding, final and conclusive, shall have the full force and effect of a judgment of the Superior Court, and shall be subject to appeal to the same extent as a judgment of the Superior Court.

        (f)    EACH PARTY HEREBY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION, CLAIM, LAWSUIT OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO: (i) THIS NOTE OR ANY SUPPLEMENT OR AMENDMENT THERETO; OR (ii) ANY OTHER PRESENT OR FUTURE INSTRUMENT OR AGREEMENT BETWEEN ANY OF THE PARTIES HERETO; (iii) ANY BREACH, CONDUCT, ACTS OR OMISSIONS OF ANY OF THE PARTIES HERETO OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, ATTORNEYS OR ANY OTHER PERSON AFFILIATED WITH OR REPRESENTING ANY OF THE PARTIES HERETO; IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE.

## 24.    AUTHORITY/CONSENT

        (a)    **Authority to Execute:**

        With the intent to be legally bound, each of the undersigned hereby covenants and acknowledges that he or she: (a) has read each of the terms set forth herein; and (b) that the undersigned has the authority to execute the Loan Documents, including but not limited to this Note, on behalf of the Borrower.

        (b)    **Consent to Terms:**

        Each of the undersigned expressly consent and agree that the Borrower shall be bound by all terms and conditions contained herein.

## 25.    NO ASSUMPTION

        This Note may be assumed only with the prior written consent of the Note Holder which consent shall be granted or withheld in the Note Holder's sole and absolute discretion.  Lender's rights hereunder may be assigned at Lender's discretion.

**BORROWER**

Jamie Mazur

THIS IS TO CERTIFY THAT THIS IS A TRUE
AND CORRECT COPY OF THE ORIGINAL

FIDELITY NATIONAL TITLE

By _____

DO NOT DESTROY THIS NOTE:  When paid, this Note, with the Deed of Trust securing it, must be surrendered to Trustee for cancellation before reconveyance will be made.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                                    )
County of Los Angeles                                 )

On _10-23-2023_____, before me, _Ariel Mansell_____, a Notary Public, personally appeared **Jamie Mazur**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

> ARIEL MANSELL
> Notary Public - California
> Los Angeles County
> Commission # 2372312
> My Comm. Expires Sep 20, 2025

THIS IS TO CERTIFY THAT THIS IS A TRUE
AND CORRECT COPY OF THE ORIGINAL

FIDELITY NATIONAL TITLE

By _____

11827A-NOTE (2023-2).doc                    11

# EXHIBIT 2



**This page is part of your document - DO NOT DISCARD**

## 20230741554





**Pages:**
**0031**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**10/30/23 AT 08:00AM**

| | |
|---|---|
| FEES: | 160.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 385.00 |



**L E A D S H E E T**



202310300150026

**00023909484**



014364702

**SEQ:**
**01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**



E441953

Recording Requested by:
Fidelity-Sherman Oaks

**RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:**

Finance California
c/o Steven C. Huskey, Esq.
Epport, Richman & Robbins, LLP
1875 Century Park East, Suite 800
Los Angeles, California 90067

APN: 4370-014-025 & 4370-013-036

---

## DEED OF TRUST; SECURITY AGREEMENT;
## AND ASSIGNMENT OF RENTS AND
## LEASES AND DEVELOPMENT INTERESTS
### (Fixture Filing Included)

This Deed of Trust; Security Agreement; and Assignment of Rents and Leases and Development Interests (Fixture Filing Included) (the "Deed of Trust") is made as of October 17, 2023. The trustor is **Jamie Mazur**, a single man, ("Trustor"). The trustee is **Finance California**, a California corporation ("Trustee"). The beneficiary is **Finance California**, a California corporation, and its assignees (collectively, "Lender" or "Beneficiary").

## ARTICLE I

## THE UNDERLYING OBLIGATION

**1.1    The Note.**

The Lender has extended credit to Trustor evidenced by that certain Note Secured By Deed of Trust of even date herewith, in the original principal amount of $575,000.00 (the "Note"), with Jamie Mazur as the Borrower, with the full debt, if not paid earlier, due and payable on the Maturity Date (defined therein), as well as the Building Loan Agreement and Assignment of Accounts of even date herewith (the "Building Loan Agreement"), and related documents. To induce the Lender to extend such credit accommodations, the Trustor has agreed to pledge and to grant the Lender a security interest in and a lien upon that certain real property as more particularly described herein.

**1.2    Construction Loan Provisions.**

1.2.1    Specifications.    The Trustor has applied for a loan for the purchase, repair and rehabilitation of the Real Property (defined in Section 2.1 below), and pursuant thereto has submitted to the Lender certain drawings, specifications and budgets in which the Trustor has represented, and does hereby warrant and represent, as being the drawings and specifications to be used in conjunction with the repair and rehabilitation of the Real Property.

1.2.2    Budget.    In its application for this loan the Trustor made certain representations as to the costs of construction, the Trustor's ability to construct and complete said improvements, and the financial conditions of the Trustor, all of which the Trustor hereby warrants and represents as true and correct, and

that no material change in any of such representations or submissions has occurred since the date of such application and the date of this deed of trust.

1.2.3  The Construction Loan Account.  The Lender is instructed to hold part of the proceeds of the Note in a Construction Loan Account, to have and to hold together with all rights, privileges, hereditaments and appurtenances belonging thereto, for the purpose of securing to the Lender payment of the obligations set forth in the Note including any and all advances made pursuant to the terms thereof or pursuant to the terms of this Deed of Trust or of any other security document given for the purpose of securing the Note.

1.2.4  The Building Loan Agreement.  The Trustor shall comply with all provisions of the Building Loan Agreement. All sums advanced by Lender under the Building Loan Agreement and all sums disbursed by Lender to protect and preserve the Real Property, or this Deed of Trust shall be and be deemed to be disbursements under the Building Loan Agreement and an indebtedness of Trustor secured by this Deed of Trust.

1.2.5  Assignment of Construction and Development Rights.  At Lender's request, Trustor shall execute and deliver to Lender, in such form as Lender may direct, assignments of any and all rights or claims of Trustor that relate to the construction of improvements on the Real Property against any party supplying labor, materials, or services in connection with such construction. In the event of a breach by Trustor of any obligation, covenant, or agreement contained in the Building Loan Agreement, beyond any applicable cure period, if any, Lender shall have the right, at its option and to the extent permitted by applicable law, upon written notice, to declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable, and to exercise any or all rights or remedies provided in the Building Loan Agreement or this Deed of Trust, or both.

**1.3    The Security.**

This Deed of Trust secures to the Lender:

(a)    The repayment of the entire debt evidenced by the Note, all amounts due thereunder, and all renewals, extensions and modifications thereto;

(b)    The payment of all other sums, with interest, advanced under Articles V, VI, VIII and IX to protect the security of this Deed of Trust;

(c)    The performance of the Trustor's covenants and agreements under the Loan Agreement and this Deed of Trust, with the exception of the Trustor's obligations pursuant to Article VI, which shall constitute a separate and additional obligation herewith;

(d)    The performance of any agreement of the Trustor to pay reasonable and out-of-pocket fees and charges to the Lender whether or not set forth in this Deed of Trust;

(e)    The payment of charges allowed by law for any statement regarding the obligations secured by this Deed of Trust;

(f)    The payment of such additional sums, with interest, as may hereafter be borrowed from the Lender by the then-record owner of the Property defined below and evidenced by a promissory note or other agreement reciting that it or they are so secured and all modifications, extensions, or renewals of the promissory note; and

(g)    At the Lender's option, payment, with interest, of any other present or future indebtedness or obligation of the Trustor (or of any successor in interest of the Trustor to such Property) due to the Lender, whether created directly or acquired by absolute or contingent assignment, whether due or not, whether otherwise secured or not, or whether existing at the time of the execution of this Deed of Trust or arising thereafter, the exercise of such option to be evidenced by a notice in writing to the Trustor or the Trustor's successor in interest.

<h3 style="text-align:center"><b>ARTICLE II</b></h3>

<h3 style="text-align:center"><b>ASSIGNMENT OF REAL PROPERTY</b></h3>

**2.1    Creation of Security Interest.**

The Trustor irrevocably grants and conveys to the Trustee, in trust with the power of sale (and in the case of a lease, the leasehold estate in and to the real property described below), all of the Trustor's right, title and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stocks in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property located in Los Angeles County, State of California, and legally described on Exhibit "A" attached hereto and incorporated herein by this reference (the "Real Property").    **"See Exhibit A Attached"**

**2.2    Warranties, Representations and Covenants of Trustor.**

The Trustor hereby warrants, represents and covenants as follows:

2.2.1    Title.    The Trustor warrants that: (a) the Trustor holds good and marketable title of record to the Real Property in fee simple, free and clear of all liens and encumbrances, except that certain deed of trust to secure an indebtedness in the original amount of $2,212,500.00, dated December 20, 2019, executed by Trustor in favor of Mortgage Electronic Registration Systems, Inc. (MERS), solely as nominee for Impac Mortgage Corp., recorded on December 24, 2019, as Instrument No. 20191440188, in the Official Records of Los Angeles County (the "Senior Deed of Trust"), and those set forth in the Real Property description or in any title insurance policy or final title opinion issued in favor of, and accepted by, the Lender in connection with this Deed of Trust; (b) the Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to the Lender; and (c) if this Deed of Trust is on a leasehold, that the ground lease is in full force and effect without default on the part of the lessor or lessee thereunder.

2.2.2    Defense of Title.    The Trustor will forever defend the title to the Real Property against the lawful claims of all persons.    In the event any action or proceeding is commenced that questions the Trustor's title or the interest of the Trustee or Lender under this Deed of Trust, the Trustor shall defend the action at the Trustor's expense.    The Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of the Lender's own choice, at the Trustor's expense, and the Trustor will deliver, or cause to be delivered, to the Lender such instruments as the Lender may request from time to time to permit such participation.

2.2.3    Compliance with Laws.    The Trustor's use of the Real Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**ARTICLE III**

**ABSOLUTE ASSIGNMENT OF RENTS AND LEASES AND DEVELOPMENT INTERESTS**

**3.1      Creation of Security Interest.**

The Trustor does hereby further and absolutely grant, transfer, and assign to the Lender all of the Trustor's right, title and interest in and to all present and future leases, licenses, concessions and occupancy agreements of the Real Property or any interest therein, and all rents, income, royalties, issues, profits and other benefits due or to become due hereafter for the occupancy or use of such Real Property (such rents, royalties, issues, profits and other benefits are hereinafter collectively referred to as "Rents") and the Additional Rights (as defined below).  This is an absolute assignment pursuant to California Civil Code section 2938.

**3.2      Warranties, Representations, and Covenants of Trustor.**

The Trustor hereby warrants, represents and covenants as follows:

3.2.1      <u>Title</u>.  The Trustor is the lawful owner of all the Rents now due or to become due; the Trustor has the right to make this assignment; full title and right to receive such Rents, due or to become due, are vested in the Lender by reason of this assignment; such Rents are free from any liens, encumbrances, claims, or setoffs of every kind whatsoever, and that no prior or other assignments of such Rents has been given by the Trustor.

3.2.2      <u>Lender as Agent</u>.  The Trustor appoints the Lender and its authorized servicing agent, if any is disclosed to Trustor, as its true, lawful and irrevocable attorney-in-fact to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, either in the name of the Trustor or in the name of the Lender, for all such Rents.  The Trustor consents that, without further notice and without releasing the liability of the Trustor, the Lender may at the Lender's discretion, agree to give any grace or indulgence in the collection of such payments before, at, or after the applicable Maturity Date.

3.2.3      <u>Lender Need Not Join Trustor</u>.  The Lender may proceed against the Trustor without joining the Trustor or any lessee or other party to the obligation to pay the Rents covered hereunder; and that cessation of the liability of any lessee for any reason shall not in any way affect the liability of the Trustor under this Deed of Trust, or the liability of the Trustor under the Note and related Loan Documents (as hereinafter defined).

3.2.4      <u>No Advance Collections</u>.  The Trustor agrees not to collect any Rents in advance of the time when they shall become due without obtaining the prior written consent of the Lender.

3.2.5      <u>Approval of Form of Lease</u>.  The Trustor shall obtain the advance consent and written approval of the Lender to the form and content of any lease or agreement to be used, or which the Trustor intends to use, in order to lease any interest or tenancy in the Real Property to any person or entity.

3.2.6      <u>Term of Lease</u>.  The Trustor shall not lease the Real Property, nor any part thereof or interest therein, for a term greater than one year without the advance consent and written approval of the Lender.

3.2.7    <u>Lender Assumes No Obligations</u>.    The Lender does not assume any of the Trustor's obligations under any lease agreement, or tenancy, or any other agreement to pay any Rents assigned hereunder, and the Trustor agrees (a) to keep and perform all obligations under such agreements or tenancies and to save the Lender harmless from the consequences of any failure to do so, and (b) to preserve the Rents free and clear of liens and encumbrances, except to or with the consent of the Lender.

3.2.8    <u>No Further Assignments</u>.  The Trustor shall not assign any interest in any lease, agreement, tenancy or any other agreement to pay any Rents assigned hereunder; and that notice of this assignment in favor of the Lender may be given to any lessee or party to any such agreement at any time at the Lender's option.

## 3.3    **The Development Interests.**

3.3.1    The Trustor hereby further transfers and assigns unto Lender all rights, titles and interests of Trustor, whether tangible or intangible, now held or hereafter acquired (the "Additional Rights"), in and to:

(a)    The Real Property;

(b)    The final plans and specifications prepared by any architect, engineer, land planner, or any such other consultant who has rendered any services in connection with the construction of any improvements upon or construction affecting the Real Property, as well as all amendments and modifications thereto;

(c)    All plats, permits (including building permits and conditional use permits), zoning rights, variances, authorizations and licenses for the construction and operation of any improvements to the Real Property, all sales and purchase agreements affecting the Real Property or any part thereof, all escrow deposits, utility deposits, security deposits or letters of credit to any Governmental Authority to secure the performance of any improvements to the Real Property in accordance with any plans, builders' contracts and all construction contracts for such improvements;

(d)    Any engineering reports, soil and environmental reports, site plans and surveys;

(e)    Working drawings, other drawings, plans and specifications referred to in any of the collateral assigned pursuant to this Section 3.3.1; and

(f)    All remedies available to the Trustor under the Additional Rights.

3.3.2    Upon the occurrence of any default described in this Deed of Trust or in the Note, the Lender may exercise its rights on behalf of Trustor.  To the full extent it is authorized to do so, Trustor does hereby make and constitute Lender its attorney-in-fact, which designation shall be deemed irrevocable and a power coupled with an interest, to act for and on behalf of Trustor and in the name of Trustor with respect to all or any of the Additional Rights.  In furtherance of the foregoing, Trustor grants to Lender a security interest in and to all the Additional Rights together with any proceeds therefrom, as additional security hereunder.

3.3.3    This assignment also secures the timely performance of the Trustor's obligations to the Lender, whether now existing or hereafter arising, under the Note and Deed of Trust and the Trustor understands and agrees that the Lender assumes no obligation or liability of any kind under or in

connection with the assignment hereunder by reason of the acceptance by the Lender of this assignment, and that this assignment is accepted solely as security for the performance by the Trustor of its obligations under the Note and Deed of Trust.

3.3.4    The Trustor represents, warrants and covenants that except by reason of its execution and delivery of this Deed of Trust, the Trustor has not sold, assigned, pledged, mortgaged, transferred or otherwise encumbered any of its right, title or interest in the Additional Rights or otherwise encumbered any of its right, title or interest in or to the foregoing; and that as long as this assignment is in effect, Trustor will not allow Additional Rights to become subject to any lien, encumbrance or security interest.

3.3.5    Until the occurrence of a default as described in the Note or this Deed of Trust, the Lender shall not exercise any rights hereunder and the Trustor shall be entitled to receive and exercise all rights under the Additional Rights. After the occurrence of a default, the Trustor shall have the right (and the Trustor hereby irrevocably constitutes and appoints the Lender as its attorney-in-fact, which power is coupled with an interest, to do so), but shall not be obligated in the Lender's name or in another person's name (including the Trustor's), to demand, receive and enforce the Trustor's rights under the Additional Rights, to make payments and give releases, receipts and satisfactions thereunder, to amend and/or supplement the Additional Rights, and to take all other actions in respect of the Additional Rights, and with the same force and effect, as fully as if the Trustor had taken such actions and this assignment had never been made.

3.3.6    The assignment of the Additional Rights is being made as security for all obligations of the Trustor under the Note and the Deed of Trust, and shall not relieve the Trustor of any of its obligations with respect to the Additional Rights. Lender does not assume and shall have no liability to perform any of the Trustor's obligations concerning the Additional Rights, and the Trustor shall remain liable for all such obligations including, but not limited to, (a) the payment of all costs and expenses to be paid by the Trustor; (b) the completion of the improvements; and (c) the performance of all covenants of the Trustor. In furtherance of the foregoing, the Trustor does hereby indemnify and hold the Lender harmless from any loss, cost or expense incurred by the Lender (whether or not such loss, cost or expense is incurred by exercise of any one or more of the Additional Rights), under and by virtue of the above set forth assignment and security interest contained in this Section 3.3.6.

3.3.7    Failure by the Lender to exercise any right that it may have hereunder shall not be deemed a waiver thereof unless so agreed in writing by the Lender, and the waiver by the Lender of a default by the Trustor hereunder shall not constitute a continuing waiver or a waiver of any other default or of the same default on any other occasion.

3.3.8    This assignment constitutes the granting by the Trustor of a security interest under Article 9 of the California Commercial Code (entitled "Secured Transactions") in the right, title, and interest of the Trustor in and to the Additional Rights, including without limitation any claims under written, oral, or statutory warranties or guaranties from any contractors or any subcontractors furnishing labor, services, or materials for the work covered by the contracts, and the Trustor agrees to execute Uniform Commercial Code Financing Statements and other documents perfecting or evidencing such security interest as reasonably requested by the Lender.

**ARTICLE IV**

**SECURITY AGREEMENT WITH FIXTURE FILING**

The Trustor further and absolutely assigns to the Lender all the Trustor's right, title and interest in and to any fixtures attached or appurtenant to the Real Property (the "Fixtures") and all personal property located on or at the Real Property or used in connection with the operation or maintenance thereof (the "Personal Property"). (The Real Property, the Rents, the Personal Property, the Additional Rights, and the Fixtures are collectively referred to hereinafter as the "Property".)

To the extent the Property is not real property under applicable law, this Deed of Trust also constitutes a security agreement as that term is used in the Uniform Commercial Code of California ("UCC") and any other applicable law, and is also filed as a fixture filing.

**4.1    Creation of Security Interest.**

The Trustor hereby grants to the Lender a second priority security interest, subject only to the Senior Deed of Trust, in the Personal Property and Fixtures now owned by the Trustor or any time hereafter acquired, including but not limited to all goods, chattels, machinery, tools, parts, supplies, and materials (including but not limited to all concrete, lumber, steel, roofing, drywall, paint, stucco, floor covering, plumbing, and electrical supplies and equipment, and irrigation systems, plants, shrubs, trees and landscaping, etc.); all air conditioning, ventilating, heating, refrigerating, communications, electronic monitoring, entertainment, recreational, maintenance, exclusion of vermin or insects, removal of dust, refuse or garbage, fire control, and alarm systems, as well as the equipment and supplies thereto; wall safes, appliances (including washers, dryers, ice boxes, refrigerators, stoves, fans, water heaters and incinerators), lobby and common area furniture, carpets and other floor coverings, draperies and drapery rods and brackets, awnings, window shades, venetian blinds, curtains, lamps, chandeliers, and other lighting fixtures; to be installed or located at the Real Property or used in the construction, maintenance or operation of the Real Property; together with all proceeds thereof (including without limitation insurance and condemnation proceeds); and all replacements and additions thereto.

**4.2    Warranties, Representations and Covenants of Trustor.**

The Trustor hereby warrants, represents and covenants as follows:

4.2.1    <u>Title Vested in the Trustor</u>.  Except for the security interest granted hereby, the Trustor is, and as to portions of the Personal Property and Fixtures to be acquired after the date hereof will be, the sole owner of the Personal Property and Fixtures, free from any adverse lien, security interest, encumbrance or adverse claim thereon of any kind whatsoever.  The Trustor will notify the Lender of, and will defend the Personal Property and Fixtures against, all claims and demands of all persons at any time claiming the same or any interest therein.

4.2.2    <u>No Further Conveyance</u>.  The Trustor shall not lease, sell, convey or in any manner transfer the Personal Property or Fixtures without the prior written consent of the Lender.

4.2.3    <u>No Removal</u>.  The Personal Property and Fixtures will be kept on or at the Real Property and the Trustor will not remove them from the Real Property without the prior written consent of the Lender, except such portions or items of Personal Property or Fixtures which are consumed or worn out in ordinary usage, all of which shall be promptly replaced by the Trustor.

4.2.4    <u>Regulatory Compliance</u>. The Trustor shall comply with all laws, ordinances, and regulations of all governmental authorities applicable to the use of the Property.

4.2.5    <u>California Place of Business</u>.   The Trustor maintains its principal place of business in the State of California, and Trustor will immediately notify the Lender of any change in its place of business.

**ARTICLE V**

**PROTECTION OF THE PROPERTY**

To protect the Property, the Trustor agrees to do all of the following, and its failure to fully perform any of the foregoing shall constitute an Event of Default under this Deed of Trust:

**5.1    Prohibition Against Further Encumbrances.**

The Trustor is hereby prohibited from and agrees not to subject the Property or title thereto to any lien or charge, voluntary or involuntary, contractual or statutory, except as expressly set forth in Section 5.11.1 below, without the prior written consent of the Lender. The Trustor shall not pledge, hypothecate, lien, convey a security interest in, or encumber the Property or any interest therein or part thereof (including, without limitation, air rights and developmental rights), nor make any further assignment of Rents from the Property or any interest therein or part thereof, voluntarily or involuntarily, without the prior written consent of the Lender. The Lender's consent shall be granted or withheld at its sole and absolute discretion.

**5.2    Preservation and Maintenance of Property.**

The Trustor shall maintain the Property in a habitable condition and promptly perform all repairs, replacements and maintenance necessary to preserve its value. The Trustor shall not destroy, damage, or substantially change the Property, allow the Property to deteriorate, commit waste or abandon the Property.

**5.3    Nuisance and Waste.**

The Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, the Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of the Lender.

**5.4    Duty to Protect.**

The Trustor agrees to neither abandon nor leave unattended the Property. The Trustor shall do all other acts, in addition to those acts set forth above in this Article V, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**5.5    Construction of Improvements.**

The Trustor shall complete in a good and workmanlike manner any building or improvement or repair which may be begun on the Property, to pay any costs incurred when due, and not to permit any mechanic's lien against the Property nor any stop notice against loan proceeds. The Trustor shall

complete all construction in accordance with the plans, specifications and budgets submitted to the Lender and, at Lender's request, in conformity with VA and FHA minimum construction requirements and in accordance with proper governmental departments having jurisdiction over the Property. Lender shall have the right to inspect the Property and the construction of improvements upon two (2) business days' advance notice to Trustor, except in the event of an emergency in which case no notice is required. Trustor shall cooperate with Lender and take all reasonable steps to facilitate Lender's inspection thereof.

**5.6     Removal of Improvements.**

The Trustor shall not demolish or remove any improvements from the Real Property without the prior written consent of the Lender. As a condition to the removal of any improvements, the Lender may require the Trustor to make arrangements satisfactory to the Lender to replace such improvements with improvements of at least equal value.

**5.7     Lender's Right to Enter.**

The Lender and its agents and representatives may, at its sole risk, but without waiving any rights which Lender may have under Trustor's insurance policies (which insurance shall be the sole source of recovery for losses arising from entries upon the Real Property under this Section) enter upon the Real Property at all reasonable times, in coordination with Trustor, to attend to the Lender's interests and to inspect the Property for purposes of the Trustor's compliance with the terms and conditions of this Deed of Trust and the other Loan Documents. The Trustor shall cooperate with the Lender and take all reasonable steps to facilitate the Lender's inspection thereof.

**5.8     Assignment of Awards and Damages to Lender.**

The Trustor hereby assigns to the Lender all sums due, paid, or payable, by judgment or settlement (a) for injury to the Property, or (b) in connection with this loan transaction. The Lender may, at its option, begin, intervene in, appear in or prosecute in its own name any legal action, or make any compromise or settlement in connection therewith. If required by the Lender, the Trustor agrees to execute further assignments of any such compensation, award, damages, rights of action and proceeds.

**5.9     Zoning.**

Without the prior written consent of the Lender, the Trustor shall not seek, make, suffer, consent to or acquiesce in any change in the zoning or conditions of use of the Property, or any portion thereof, nor shall the Trustor subject any part of the Property to any declaration of condominium or convert any part of the Property to a condominium, co-operative or other form of multiple ownership and governance. The Trustor shall comply with and make all payments required under the provisions of any covenants, conditions or restrictions affecting the Property. The Trustor shall keep all licenses, permits, franchises and other approvals necessary for the operation of the Property in full force and effect.

**5.10    Hazard Insurance.**

5.10.1  Maintenance of Insurance. The Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property as well as the Personal Property and Fixtures, in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of the Lender, together with such other insurance, including but not limited to hazard, liability, earthquake, extended coverage insurance, builder's risk insurance with course of construction

endorsement for the full replacement value of the Improvements, and boiler insurance, as required under the Building Loan Agreement or as may from time to time be requested by Lender or as may be required by applicable law, the construction contracts, or the Loan Documents.

     5.10.2  <u>Policies Upon Foreclosure</u>.  If the Property is acquired by the Lender, the Trustor's right to any insurance policy and proceeds resulting from damage to the Property prior to the acquisition shall pass to the Lender to the extent of the sums secured by this Deed of Trust immediately prior to the acquisition.  Unless the Lender and the Trustor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the Trustor's monthly payments or change the amount of the payments.

**5.11    <u>Taxes and Other Sums Due; Liens.</u>**

     The Trustor shall pay all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions attributable to the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property.  The Trustor shall pay them on time directly to the person owed payment.  The Trustor shall promptly furnish to the Lender all notices of amounts to be paid under this Section.  The Trustor shall promptly furnish to the Lender receipts evidencing the payments.

     5.11.1  <u>No Priority Liens</u>.  The Trustor shall maintain the Property free of all liens having priority over or equal to the interest of the Lender under this Deed of Trust, except for the lien of taxes and assessments not due.  If the Lender determines that any part of the Property is subject to a lien, except as expressly set forth above, which may attain priority over this Deed of Trust, the Lender may give the Trustor a notice identifying the lien.  The Trustor shall satisfy the lien within ten (10) days of the giving of notice.

     5.11.2  <u>Lender's Advance of Payment</u>.  If the Trustor fails to make any such payment as required above, the Lender, without contesting the validity or amount, may make the payment together with any related costs, expenses, fees, or charges.  If the Lender does make such payment, the Trustor shall reimburse all sums advanced together with interest thereon at the rate of interest due according to the Note, with such reimbursement all immediately due and payable.

     5.11.3  <u>Notification of Valuation and Other Charges</u>.  The Trustor agrees to notify the Lender and all appropriate taxing authorities immediately upon the occurrence of any event which does or may affect the value of the Property; the tax basis of the Property; the availability of any exemption to which the Trustor may be entitled, or the passage of any law which reduces the value of the Property for tax purposes; or any change in the manner of the collection of any such taxes, including but not limited to the postponement of the payment of all or any part of any real or personal property taxes, which would affect this Deed of Trust.

     5.11.4  <u>Right To Contest</u>.  The Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as the Lender's interest in the Property is not jeopardized.  If a lien arises or is filed as a result of nonpayment, the Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after the Trustor has notice of the filing, secure the discharge of the lien, or if requested by the Lender, deposit with the Lender cash or a sufficient corporate surety bond or other security satisfactory to the Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees and other charges that could accrue as a result of a foreclosure or sale under the lien.  In any contest, the Trustor shall defend itself and the Lender

and shall satisfy any adverse judgment before enforcement against the Property. The Trustor shall name the Lender as an additional obligee under any surety bond furnished in the contest proceedings.

5.11.5 <u>Notice of Construction</u>. The Trustor shall comply with all provisions of the Disbursement Agreement executed concurrently herewith in connection with any work which is performed, any services which are furnished, or any materials which are supplied to the Property.

5.11.6 <u>Evidence of Payment</u>. The Trustor shall upon demand furnish to the Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to the Lender at any time a written statement of the taxes and assessments against the Property.

5.11.7 <u>Authorization to Obtain Municipal Utility Records</u>. The Trustor hereby expressly grants the Lender permission to obtain, at any time during the term of the Note, copies of any municipal utility records of the Trustor related to the Property. A copy of this Deed of Trust may be presented to the municipal utility from which such records and being requested and may be relied upon by such entity as the Trustor's consent to such request of the Lender.

**5.12    Condemnation.**

5.12.1 <u>Proceedings</u>. If any proceeding in condemnation is filed, the Trustor shall promptly notify the Lender in writing upon learning of the same, and the Trustor shall promptly take such steps as may be necessary to defend the action and obtain the award. The Trustor may be the nominal party in such proceeding, but the Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and the Trustor will execute and deliver or cause to be delivered to the Lender such instruments as may be requested by it from time to time to permit such participation.

5.12.2 <u>Application of Net Proceeds</u>. The proceeds of any award or claim for damages, direct or indirect, in connection with any condemnation action or proceeding, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to the Lender, subject, if this Deed of Trust is on a leasehold, to the rights of the lessor under the ground lease. The Lender may apply these proceeds to any debt secured by this Deed of Trust. Said application shall not cure or waive any default or notice of default nor invalidate any act done because of such notice, nor shall said application change the amount due on the Note secured by this Deed of Trust.

**ARTICLE VI**

**HAZARDOUS SUBSTANCES**

To further protect the Property, the Trustor agrees to do all of the following, and its failure to perform any of the foregoing shall also constitute on Event of Default under this Deed of Trust.

**6.1    Definitions.**

The terms "hazardous waste," "hazardous substance," "disposal," "release," and "threatened release," as used in this Deed of Trust, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99 499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. section 1801, et seq., the Resource Conservation and Recovery Act, 49 U.S.C. section 6901, et seq., chapters 6.5 through 7.7 of Division 20

of the California Health and Safety Code, section 25100, et seq., or other applicable state or federal laws, rules or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by products or any fraction thereof and asbestos.

**6.2**     **Representations and Warranties.**

      The Trustor represents, warrants and covenants to the Lender that:

      6.2.1    No Prior Use Of Hazardous Substances. At no time during the period of the Trustor's ownership of the Property, has there been any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance by any person on, under, or about the Property.

      6.2.2    No Knowledge of Existence. The Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by the Lender in writing: (i) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any hazardous waste or substance by any prior owners or occupants of the Property; or (ii) any actual or threatened litigation or claims of any kind by any person or entity relating to such matters.

      6.2.3    No Future Contamination. Except as previously disclosed to and acknowledged by the Lender in writing: (i) neither the Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of, or release any hazardous waste or substance on, under, or about the Property; and (ii) any such legally permitted activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation those laws, regulations, and ordinances described above.

      6.2.4    Due Diligence. The representations and warranties contained herein are based on the Trustor's due diligence in investigating the Property for hazardous waste.

      6.2.5    Future Use of Property. The Trustor shall keep and maintain the Property in compliance with and shall not cause or permit the Property to be in violation of any federal, state or local laws, ordinances or regulations relating to industrial hygiene or to the environmental conditions on, in, under or affecting the Property, including but not limited to soil and groundwater conditions. The Trustor shall not use, generate, manufacture, store or dispose of on, in, under or affecting the Property or transport to or from the Property any flammable explosives, radioactive materials, hazardous wastes, toxic substances or related materials, including without limitation any substances defined as or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials" or "toxic substances" under any applicable federal or state laws or regulations (collectively referred to hereinafter as "Hazardous Materials").

**6.3**     **Lender's Right to Inspect.**

      The Trustor authorizes the Lender and its agents to enter upon the Real Property to make such inspections and tests as the Lender may deem appropriate in connection with any request for an advance or draw by Borrower, or upon at least 24 hours prior notice to determine compliance of the Property with Article VI of the Deed of Trust. Any inspections or tests made by the Lender shall be for the Lender's purposes only and shall not be construed to create any responsibility or liability on the part of the Lender to the Trustor or to any other person.

**6.4    Trustor's Indemnification of Lender.**

The Trustor hereby (a) releases and waives any future claims against the Lender for indemnity or contribution in the event the Trustor becomes liable for cleanup or other costs under any such laws, and (b) agrees to and does hereby indemnify and hold harmless the Lender, its directors, officers, employees, agents, attorneys, insurers, successors and assigns from and against any loss, damage, cost, expense or liability directly or indirectly arising out of or attributable to the use, generation, storage, manufacture, treatment, release, threatened release, discharge, disposal or presence of Hazardous Materials, whether or not the same should have been known to the Trustor on, in, under, about or affecting the Property, including, without limitation:

(i)    All foreseeable consequential damages;

(ii)    The costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, remedial or other required plans; and

(iii)    All reasonable costs and expenses incurred by the Lender in connection with clauses (i) and (ii), including but not limited to reasonable attorneys' fees.

The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by the Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**6.5    Trustor to Notify Lender.**

The Trustor shall immediately advise the Lender in writing of:

(a)    Any and all enforcement, cleanup, remedial, removal or other governmental or regulatory actions instituted, completed or threatened pursuant to any applicable federal, state or local laws, ordinances, or regulations relating to any Hazardous Materials affecting the Property ("Hazardous Materials Laws");

(b)    All claims made or threatened by any third party against the Trustor or the Property relating to damage, contribution, cost recovery compensation, loss or injury resulting from any Hazardous Materials (the matters set forth in clauses (a) and (b) above are hereinafter referred to as "Hazardous Materials Claims"); and

(c)    The Trustor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property or any part thereof to be classified as "border-zone property," under the provisions of the California Health and Safety Code sections 25.220 et seq., any other law, or any regulation adopted in accordance therewith, or to be otherwise subject to any restrictions on the ownership, occupancy, transferability or use of the Property under any Hazardous Materials Laws.

**6.6**     **Lender May Join in Action.**

The Lender shall have the right to join and participate in, as a party if it so elects, any legal proceedings or actions initiated in connection with any Hazardous Materials Claims and to have its reasonable attorneys' fees in connection therewith paid by the Trustor.

**6.7**     **Lender's Consent to Remedial Action.**

The Trustor shall not take any remedial action in response to the presence of any Hazardous Materials on, in, under, about or affecting the Property nor enter into any settlement agreement, consent decree or other compromise with respect to any Hazardous Materials Claims, which remedial action, settlement, consent or compromise might, in the Lender's reasonable judgment, impair the value of the Lender's security hereunder, without the Lender's prior written consent, which consent shall not be unreasonably withheld; provided, however, that the Lender's prior consent shall not be necessary in the event that the presence of Hazardous Materials on, in, under, about or affecting the Property either poses an immediate threat to the health, safety or welfare of any individual or is of such a nature that an immediate remedial response is necessary, and it is not possible to obtain the Lender's consent before taking such action, provided that in such event the Trustor shall notify the Lender as soon as practicable of any action so taken.  The Lender agrees not to withhold its consent, when such consent is required hereunder, if either:

        (a)     A particular remedial action is ordered by a court of competent jurisdiction; or

        (b)     The Trustor establishes to the reasonable satisfaction of the Lender that there is no alternative to such remedial action that would result in materially less impairment of the Lender's security hereunder.

**6.8**     **Environmental Obligations Are Not Secured by This Deed of Trust.**

The obligations of the Trustor and the rights of the Lender as they pertain to this Article VI and the Trustor's agreement to keep and maintain the Property in compliance with all environmental and hazardous material regulations shall not be secured by this Deed of Trust and shall not be subject to California Code of Civil Procedure sections 580a, 580d, or 726, or any other anti deficiency laws. Further, said obligations of this Article VI shall survive the foreclosure of this Deed of Trust or any personal property security interest, the repayment of any and all indebtedness of the Trustor, or any indebtedness owed to the Lender.

**ARTICLE VII**

**FURTHER EVENTS OF DEFAULT**

In addition to the breaches and defaults set forth elsewhere in this Deed of Trust, each of the following shall also constitute an event of default hereunder following the expiration of any notice and cure period expressly provided hereunder (each of which are referred to herein as an "Event of Default"):

**7.1**     **Nonpayment.**

The Trustor's failure to pay when due the indebtedness evidenced by the Note, all advances incurred by the Lender, all costs incurred by the Lender, or any other sums secured by this Deed of Trust, or the Trustor's failure to deposit funds when due.

**7.2    Breaches.**

Any warranty, representation or statement made or furnished to the Lender by or on behalf of the Trustor in furtherance of any request or otherwise under this Deed of Trust, or any documents subsequently furnished at the Lender's request, is, or at the time made or furnished was, false in any material respect, or the breach of any covenant, condition or promise herein, and Trustor does not remedy such breach within thirty (30) days of Beneficiary's notice.

**7.3    Foreclosure, Forfeiture, etc.**

Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of the Trustor or by any governmental agency against any of the Property. However, this provision shall not apply in the event of a good faith dispute by the Trustor as to the validity or reasonableness of the claim which is the basis of the foreclosure or forfeiture proceeding, providing that the Trustor gives the Lender written notice of such claim and furnishes reserves or a surety bond for the claim satisfactory to the Lender.

**7.4    Breach of Other Agreement.**

Any breach by the Trustor under the terms of the Note, the Building Loan Agreement, or any other agreement between the Trustor and the Lender, or with respect to the Senior Deed of Trust, that is not remedied within any grace or cure period provided therein, if any, including without limitation any agreement concerning any indebtedness or other obligation of the Trustor to the Lender, whether existing now or later.

**7.5    Assignment for Benefit of Creditors.**

The Trustor's: (a) application for or consent in writing to the appointment of a receiver, trustee, conservator, or liquidator of the Trustor or the Trustor's property; (b) filing of a voluntary petition in bankruptcy, or admission in writing of the Trustor's inability to pay his debts as they come due; (c) making a general assignment for the benefit of creditors; (d) filing a petition or answer seeking reorganization or rearrangement with creditors or taking advantage of any insolvency law; (e) filing an answer admitting the material allegations of a petition filed against the Trustor in any bankruptcy, reorganization, insolvency, or similar proceeding; or (f) the commencement of any proceeding under any bankruptcy or insolvency laws by or against the Trustor.

**7.6    Death or Incapacity of Trustor.**

Except to the extent prohibited by federal law or California law, the death or incapacity of the Trustor also shall constitute an Event of Default under this Deed of Trust, provided, however, that in the event Trustor dies, Lender shall not declare a default hereunder if, within forty five (45) days of Trustor's death or incapacity, Borrower provides Lender a new trustor reasonably acceptable to Lender to obligate itself under this Deed of Trust and the other Loan Documents (although such new trustor shall not preclude or prohibit Lender from filing a claim in any probate estate of the deceased Trustor or seeking to enforce this Deed of Trust against the estate of such deceased Trustor), which new trustor executes such documents and agreements as Lender may request to assume the obligations of such deceased Trustor hereunder.

**7.7**    <u>Revocation of Permit or License.</u>

In the event that the Personal Property or Fixtures, or any portion thereof, requires any state or local license, the issuance of any citation or the revocation of such permit or license, where such citation or revocation is not rescinded within thirty (30) days.

**7.8**    <u>Alienation of Interests.</u>

The alienation of any portion of the Trustor's interest in the Property including circumstances wherein:

(a)    The Trustor sells, enters into a contract of sale, conveys or alienates the Property or any part thereof, or suffers his title or any interest to be divested; or

(b)    Whether voluntarily or involuntarily, the Trustor leases the Property or any part thereof for a term of more than one year, or changes or permits to be changed the character or use of the Property, or drills or extracts or enters into a lease for the drilling for or extracting of oil, gas or other hydrocarbon substance or any mineral of any kind or character on such Property.

## ARTICLE VIII

### LENDER'S RIGHTS

If an Event of Default occurs, the Lender shall have all of the following rights and remedies:

**8.1**    <u>Default Interest.</u>

The Lender shall have the right to charge interest on the Note at the higher "Default Rate" as is further described in the Note.

**8.2**    <u>Acceleration Clause: Right To Declare Sums Due.</u>

The Lender shall have the right, at its option, to declare the indebtedness specified in the Note immediately due and payable without prior notice and regardless of any maturity date of the Note or any prior forebearings if:

(a)    The Trustor is in default in the performance of any of its obligations under the Note, this Deed of Trust or any of the other Loan Documents (as hereinafter defined); or

(b)    An Event of Default has occurred; or

(c)    The Trustor sells, enters into a contract of sale, conveys or alienates the Property or any part thereof, or suffers its title or any interest to be divested; or

(d)    Whether voluntarily or involuntarily, the Trustor leases the Property or any part thereof, or changes or permits to be changed the character or use of the Property, or drills or extracts or enters into a lease for the drilling for or extracting of oil, gas or other hydrocarbon substance or any mineral of any kind or character on such Property; or

(e)    The Trustor has made any material misrepresentation or failed to disclose any material fact in those certain financial and other written representations and disclosures made by Trustor in order to induce the Lender to enter into the transaction evidenced by the Note which this Deed of Trust secures; or

(f)    Any breach of the Trustor under the terms of any other agreement between the Trustor and the Lender that is not remedied within the applicable grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of the Trustor to the Lender, whether now existing or hereinafter created.

**8.3    Default; Acceleration; Foreclosure Sale Upon Default.**

Upon an Event of Default, the Lender at its option may:

8.3.1    Foreclose Judicially or Non-Judicially.    The Lender shall have the right and option to foreclose judicially or non-judicially.    In addition, the Lender shall have the right to concurrently commence both judicial and non-judicial foreclosure in accordance with California law and elect to seek a deficiency judgment against all appropriate parties.    No such action shall be considered as constituting an election of remedies until the actual foreclosure sale has been completed.

8.3.2    Notice of Default.    Deliver to the Trustee a written declaration of default and demand for sale and may cause to be filed of record a written notice of default and of election to cause the Property to be sold.    The Lender may also deposit with the Trustee the Deed of Trust and any Note and all documents evidencing expenditures and indebtedness secured thereby.    After the lapse of such time as then may be required by law following recordation of such notice of default, and notice of sale having been given as then required by law, without demand on the Trustor, the Trustee may sell such Property at the time and place filed by such Trustee, either as a whole or in separate parcels, and in such order as the Trustee shall determine (subject to such rights as the Trustor may have at law to direct such order of sale), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale.    The Trustee may postpone the sale of all or any portion of such Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the postponement.    The Trustee shall deliver to the purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied.    The recital in such deed of any matters of fact shall be conclusive proof of the truthfulness thereof.    Any person, including the Trustor, the Trustee or the Lender, may purchase at such sale.    After deducting all costs, fees and expenses of the Trustee, and of this Deed of Trust, including costs of evidence of title in connection with such sale, the Trustee first shall apply the proceeds of sale to payment of all sums expended under the terms of the Deed of Trust, not then repaid, with accrued interest at the rate then payable under the Note secured thereby, and then to payment of all other sums secured thereby and, if thereafter there be any proceeds remaining, shall distribute them to the person or persons legally entitled thereto.

8.3.3    Collect Rents.    The Trustor agrees that the Lender shall have the right, without notice to the Trustor, to take possession of and manage the Property either in person, by state court receiver, or by agent, with or without bringing any action or proceeding, and with or without taking possession of the premises, demand, sue for, or otherwise collect such Rents, including amounts past due and unpaid, and apply the net proceeds, over and above the Lender's costs, against the indebtedness secured hereby.    The Trustor hereby authorizes and directs each and every lessee, tenant or other person obligated to pay any Rents assigned hereunder, upon receipt of written notice from the Lender that an Event of Default exists, to pay to the Lender all such Rents and to continue to do so until otherwise

notified by the Lender. In furtherance of this right, the Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to the Lender. If the Rents are collected by the Lender, then the Trustor irrevocably designates the Lender as the Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of the Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to the Lender in response to the Lender's demand shall satisfy the obligations for which the payments are made. If any payment of Rents is made to the Trustor, the Trustor will promptly transmit such payment to the Lender, its agent or a state court receiver, in the same form as it is received by the Trustor, except that the Trustor will endorse to the Lender, its agent or a state court receiver, instruments which are payable to the Trustor. The Lender shall be entitled to deduct and retain from any monies received by it hereunder for its services or that of any agents or any state court receiver in collecting said monies a just and reasonable compensation, and apply the remaining monies to the obligations together with all costs and attorney's fees, in such order of priority as the Lender in its sole discretion may determine. Exercise or non-exercise by the Lender of the options granted in this paragraph, or collection and application of such Rents, shall not be considered a waiver of any default by the Trustor or the obligations owed by the Trustor to the Lender to pay to the Lender such Rents, and to continue to do so until otherwise notified by the Lender. Failure of the Lender from time to time to enforce its rights under this assignment shall not in any manner prevent its subsequent enforcement, the Lender not being obligated to collect anything hereunder, but being accountable only for sums actually collected.

8.3.4    Appoint a Receiver. The Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the indebtedness secured hereby. The receiver may serve without bond if permitted by law. The Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the indebtedness. Employment by the Lender shall not disqualify a person from serving as a receiver.

8.3.5    Tenancy at Sufferance. If the Trustor remains in possession of the Property after the Property is sold as provided above or the Lender otherwise becomes entitled to possession of the Property upon default of the Trustor, the Trustor shall become a tenant at sufferance of the Lender or the purchaser of the Property and shall, at the Lender's or purchaser's option, either (a) pay a reasonable rental for the use of the Property, or (b) vacate the Property immediately upon demand.

8.3.6    UCC Remedies. With respect to all or any part of the Personal Property and the Fixtures, the Lender shall have all the rights and remedies of a secured party under the UCC and other applicable law, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

8.3.7    Sale of Personal Property and Fixtures. The Lender may elect to treat the Personal Property, the Fixtures, and any of the Property which consists of a right in action or which is Property that can be severed from the Real Property or the Fixtures thereon without causing structural damage thereto as if the same were personal property, and dispose of the same in accordance with applicable law, separate and apart from the sale of the Real Property. Any sale of any Personal Property or Fixtures hereunder shall be conducted in any manner permitted by Section 9501 or any other applicable section of the UCC. Where the Property consists of Real Property and Personal Property or Fixtures, whether or not such Personal Property is located on or within the Real Property, the Lender may elect in its discretion to exercise its rights and remedies against any or all of the Real Property, Personal Property and Fixtures in such order and manner as is now or hereafter permitted by applicable law and/or this Deed of Trust. Without limiting the generality of the foregoing, the Lender may, in its sole and absolute

discretion and without regard to the adequacy of its security, elect to proceed against Personal Property and Fixtures in any manner permitted under Section 9501 of the UCC; and if the Lender elects to proceed in the manner permitted under Section 9501 of the UCC, the power of sale herein granted shall be exercisable with respect to all or any of the Real Property, Personal Property and Fixtures covered hereby as designated by the Lender, and the Trustee is hereby authorized and empowered to conduct any such sale of the Real Property, Personal Property and Fixtures in accordance with the procedures applicable to real property.  Where the Property consists of Real Property and Personal Property, any reinstatement of the obligation secured by this Deed of Trust, following default and an election by the Lender to accelerate the maturity of said obligation, which reinstatement is made by the Trustor or any other person or entity permitted to exercise the right of reinstatement under Section 2924c of the California Civil Code or any successor statute, shall not prohibit the Lender, in accordance with the terms of UCC section 9501 from conducting a sale or other disposition of the Personal Property or Fixtures or from otherwise proceeding against or continuing to proceed against any Personal Property or Fixtures in any manner permitted by the UCC; nor shall any such reinstatement invalidate, rescind or otherwise affect any sale, disposition or other proceeding held, conducted or instituted with respect to any Personal Property or Fixtures prior to such reinstatement or pending at the time of such reinstatement.  Any sums paid to the Lender in effecting any reinstatement pursuant to Section 2924c of the California Civil Code shall be applied to the secured obligation and to the Lender's and the Trustee's reasonable costs and expenses in the manner required by Section 2924c.  Should the Lender elect to sell any portion of the Property which is Real Property or which is Personal Property or Fixtures that the Lender has elected under Section 9501 of the UCC to sell together with the Real Property in accordance with the laws governing a sale of real property, the Lender or the Trustee shall give such notice of default and election to sell as may then be required by law.  Any person, including the Trustor, the Trustee or the Lender, may purchase at any sale hereunder, and the Lender shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness secured by this Deed of Trust.  Should the Lender desire that more than one sale or other disposition of the Property or the Personal Property be conducted, the Lender may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as the Lender may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Property or the Personal Property not sold until all indebtedness secured by this Deed of Trust has been fully paid.  Regardless of whether the Lender elects to dispose of the Property or the Personal Property through more than one sale, the Trustor agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein the same may be made, including reasonable compensation to the Trustee and the Lender, their agents and counsel, and to pay all expenses, liabilities and advances made or incurred by the Trustee or the Lender in connection with such sale or sales, together with interest on all such advances made by the Trustee or the Lender at the maximum rate permitted by law to be charged by the Trustee or the Lender, as applicable.  The Lender shall give the Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made.  Reasonable notice shall mean notice given at least five (5) days before the time of the sale or disposition.  Any sale of Personal Property may be made in conjunction with any sale of the Real Property.  To the extent permitted by applicable law, the Trustor hereby waives any and all rights to have the Property marshaled.  In exercising its rights and remedies, the Trustee or the Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales.  The Lender shall be entitled to bid at any public sale on all or any portion of the Property.  Further, the Lender has the right to demand that the Trustor assemble the Property and make it available to the Lender at a place designated by the Lender or otherwise turn over possession of the Property.  The Trustor shall promptly comply with any such demand.  The Lender shall also have full power to enter upon the Property of the Trustor to take possession of and remove the Property and shall have no liability to the Trustor for trespass.

8.3.8    Right to Complete Construction.  Upon the happening of an Event of Default, Lender shall have the right, in addition to such other rights and remedies available to Lender hereunder or under the Loan Documents to enter into possession of the Property, to take over and complete the construction of the improvements substantially in accordance with the approved plans, to discharge and replace any contractor employed in connection with construction of the improvements (subject to the terms of any applicable construction contract), to employ watchmen to protect the Property and the improvements thereon and, for any or all of the foregoing purposes, to make disbursements from the Account (as defined in the Building Loan Agreement).  Any contracts entered into or indebtedness incurred in the exercise of such right may be executed in the name of Trustor, for which purpose Lender is hereby authorized and irrevocably appointed the attorney-in-fact of Trustor (said appointment being coupled with an interest) to enter into such contracts and incur such obligations and to enforce any contracts or agreements theretofore made by or on behalf of Trustor and to do any and all things necessary or proper to complete the work of construction.  In no event shall Lender be required to expend its own funds to complete the improvements if the funds in the Account are insufficient, but Lender may, at its option, advance such funds.  Any funds so advanced shall be secured by this Deed of Trust and shall be paid to Lender by Trustor on demand together with interest at the default/penalty rate as set forth in the Note from the date of advance until paid.

**8.4    Protection of Lender's Security.**

If the Trustor fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects the Property or title thereto or the interest of the Lender therein, including but not limited to eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then the Lender at the Lender's option may make such appearances, disburse such sums and take such action as the Lender deems necessary, in its sole discretion, to protect the Lender's interest, including but not limited to:

(a)    Disbursement of attorneys' fees;

(b)    Entry upon the Property to make repairs;

(c)    Procurement of satisfactory insurance as provided hereinabove; and

(d)    If this Deed of Trust is on a leasehold, exercise of an option to renew or extend the ground lease on behalf of the Trustor and the curing of any default by the Trustor in the terms and conditions of the ground lease.

Any amounts disbursed by the Lender pursuant to this provision with interest thereon from the date paid by the Lender until the date repaid by the Trustor shall become additional indebtedness of the Trustor secured by this Deed of Trust.  Unless the Trustor and the Lender agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note unless collection from the Trustor of interest at such rate would be contrary to applicable law.  The Trustor hereby covenants and agrees that the Lender shall be subrogated to the lien of any mortgage or other lien so discharged, in whole or in part, for the full amount of the indebtedness secured hereby.  Nothing contained in this Section shall require the Lender to incur any expense or take any action hereunder.  The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which the Lender may be entitled on account of the default.  Any such action by the Lender shall not be construed as curing the default so as to bar the Lender from any remedy that it otherwise would have had.  The Lender shall not be obligated to perform or discharge, nor does the Lender undertake to discharge, any such duty, obligation or liability.  The Trustor agrees to indemnify the

Lender against, and hold the Lender harmless from, all liability, loss, cost and damage that directly or indirectly results therefrom.

**8.5     Trustor Not Released; Forbearance By Lender Not a Waiver.**

Extension of the time for payment or modification of the repayment of the sums secured by this Deed of Trust granted by the Lender to any successor in interest of the Trustor shall not operate to limit or release the liability of the original Trustor or the Trustor's successors in interest. The Lender shall not be required to commence proceedings against the Trustor or any successor in interest or refuse to extend time for payment or otherwise modify the repayment of the sums secured by this Deed of Trust by reason of any demand made by the original Trustor or the Trustor's successors in interest. Any forbearance by the Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**8.6     Other Remedies.**

All of the Lender's remedies, whether evidenced by this Deed of Trust or any other writing, shall be cumulative and may be exercised singularly or concurrently. The Trustee or the Lender shall have all other rights and remedies provided in this Deed of Trust, the Note, and by other contract or law. Furthermore, in addition to the rights and remedies set forth herein, the Lender shall also have the option to avail itself to all rights and remedies provided by law, whether now in existence or hereinafter created.

**8.7     Waiver; Election of Remedies.**

A waiver by any party of a breach of a provision of this Deed of Trust shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision as to any other default. Election by the Lender to pursue any remedy provided in this Deed of Trust, the Note, or any of the Loan Documents (as hereinafter defined), or provided by law shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of the Trustor under this Deed of Trust after failure of the Trustor to perform shall not affect the Lender's right to declare a default and to exercise any of its remedies.

## ARTICLE IX

### ATTORNEYS' FEES AND EXPENSES

If the Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, the Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal. Whether or not any court action is involved, all reasonable expenses incurred by the Lender which in the Lender's opinion are necessary any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, the Lender's attorneys' fees whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. The Trustor also will pay any court costs, in addition to all other sums provided by law.

# ARTICLE X

# THE TRUSTEE

**10.1    Power of Trustee.**

The Trustee shall have all of the rights and duties of the Lender as set forth in this section.

At the Lender's option, the Trustee may:

(a)    Release any debt;

(b)    Extend, modify or alter other terms of payment of such debt;

(c)    Accept additional security;

(d)    Substitute or release any security property;

(e)    Recover all or part of any security property;

(f)    Consent to the making of any map or plat; and

(g)    Join in any extension or subordination agreement.  Any such act by the Trustee will not affect the Trustor's liability for the payment of the debt secured by this Deed of Trust, nor will it affect the lien of this Deed of Trust on the remainder of the Property for the full amount of the Trustor's debt to the Lender.

**10.2    Successor Trustee.**

The Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by the Lender and recorded in the office of the Recorder of the county in which the Property is located.  The instrument shall contain the name of the original Lender, Trustee and Trustor, the location where this Deed of Trust is recorded and the name and address of the successor trustee.  Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law.  When recorded in the office of the County Recorder of the county or counties in which the Property is situated, such instrument shall be conclusive proof of the proper appointment of the successor trustee.

**10.3    Misrepresentation or Nondisclosure.**

The Trustor has made certain written representations and disclosures in order to induce the Lender to make and modify the loan evidenced by the Note, which the Deed of Trust secures, and in the event that the Trustor has made any material misrepresentation or failed to disclose any material fact, the Lender, at its option and without prior notice, shall have the right to declare the indebtedness secured by the Deed of Trust, irrespective of the Maturity Date specified in the Note, immediately due and payable.  The Trustee, upon presentation to it of an affidavit signed by the Lender setting forth facts showing a default by the Trustor under this paragraph, is authorized to accept as true and conclusive all facts and statements therein, and to act thereon.

## ARTICLE XI

## FURTHER ASSURANCES AND ATTORNEY-IN-FACT

**11.1    Further Assurances.**

At any time, and from time to time upon request of the Lender and/or its duly appointed service agent, the Trustor shall make, execute and deliver, or will cause to be made, executed or delivered, to the Lender or to the Lender's designee, and when requested by the Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as the Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of the Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (a) the obligations of the Trustor under the Note, this Deed of Trust and the Loan Documents (as defined herein), and (b) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by the Trustor.  Unless prohibited by law or agreed to the contrary by the Lender in writing, the Trustor shall reimburse the Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**11.2    Attorney-In-Fact.**

If the Trustor fails to do any of the things referred in the preceding paragraph, the Lender may do so for and in the name of the Trustor and at the Trustor's expense.  For such purposes, the Trustor hereby irrevocably appoints the Lender as the Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in the Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

## ARTICLE XII

## NOTICE

Any notice to the Trustor provided for in this Deed of Trust shall be given by delivering it in writing by personal service, by facsimile or by mailing it by first class mail, unless another method is required by law.  Any notice provided for in this Deed of Trust shall be deemed to have been given to the Trustor or the Lender when forwarded to the following address:

(a)    If to the Trustor, to:

Jamie Mazur
2314 La Mesa Drive
Santa Monica, California 90402

(b)    If to the Lender, to:

Finance California
15604 Vandorf Place
Encino, California 91436
Attn:  Jason Wiener
Fax: (310) 286-7540

(c)    With a copy to:

> Epport, Richman & Robbins, LLP
> 1875 Century Park East, Suite 800
> Los Angeles, California 90067-2512
> Attn:  Steven C. Huskey, Esq.
> Fax: (310) 785-0787

Such addresses may be changed by notice to the other parties, given in the same manner as provided above.  Any facsimile notice received after 5:00 p.m. on a business day is deemed given on the succeeding business day.  The Trustor requests that copies of the notices of default and sale be sent to the Trustor at the address in this Article XII.

## ARTICLE XIII

## MISCELLANEOUS

**13.1    Entire Agreement.**

This Deed of Trust, the Note, the Business Loan Agreement and any related documents, guaranties or pledge agreements executed contemporaneously herewith (collectively referred to hereinafter as the "Loan Documents") constitute the parties' entire agreement with respect to the subject matter hereof and supersede all agreements, representations, warranties, statements, promises, and understandings, whether oral or written, with respect to the subject matter herewith.  None of the Loan Documents, including but not limited to this Deed of Trust, may be amended, altered, or modified except by a writing signed by the Lender.

**13.2    Modification.**

This Deed of Trust can only be modified, in writing, and only if signed by the Trustor and the Lender.

**13.3    Payments.**

The Lender has the right to determine how payments received will be applied to the various items which comprise the Trustor's obligations to the Lender.

**13.4    Reconveyance.**

Upon payment of all sums secured by this Deed of Trust, the Lender shall request the Trustee to reconvey the Property and shall mark all Note evidencing the debt secured by this Deed of Trust as canceled.  Beneficiary shall executed partial releases of the lien of this Deed of Trust upon the following conditions, provided Trustor is not in default under any terms of conditions of the Note and this Deed of Trust, Beneficiary agrees to request partial reconveyances from the Trustee of the vacant land parcel (APN 4370-013-036) upon Beneficiary's receipt of the net proceeds of the sale of such portion of the Property, of at least $250,000.00.  The Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it, and may charge such fees for each full or partial reconveyance of this Deed of Trust then customarily charged for such services.

**13.5    No Assumption.**

The Note, Deed of Trust and the Loan Documents may be assumed only with the prior written consent of the Lender which consent shall be in the Lender's sole and absolute discretion.

**13.6    Waiver of Statute of Limitations.**

Time is of the essence in all of the Trustor's obligations.  To the extent permitted by law, the Trustor knowingly, intentionally and voluntarily waives all present or future statutes of limitations with respect to any debt, demand or obligation secured by this Deed of Trust, in any action to enforce this Deed of Trust.

**13.7    No Offsets.**

No indebtedness secured by this Deed of Trust shall be offset, deemed to have been offset or compensated by all or part of any claim, cause of action, counterclaim or cross-claim, whether liquidated or unliquidated, which the Trustor now or hereafter may have or may claim to have against the Lender; and, in respect to the indebtedness now or hereafter secured hereby, the Trustor waives, to the fullest extent permitted by law, the benefits of California Code of Civil Procedure section 431.70 (and any successor laws), which Section provides:

> "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in its answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations.  If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party.  The defense provided by this section is not available if the cross-demand is barred for failure to assert it in a prior action under Section 426.30.  Neither person can be deprived of the benefits of this section by the assignment or death of the other.  For the purposes of this section, a money judgment is a 'demand for money' and, as applied to a money judgment, the demand is barred by the statute of limitations when enforcement of the judgment is barred under Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9."

**13.8    Additional Trustor's Waivers.**

The Trustor, for the Trustor and its successors and assigns, and for any and all persons ever claiming any interest in the Property, to the full extent permitted by law, hereby knowingly, intentionally and voluntarily waives, releases, relinquishes and forever forgoes: (a) all rights of valuation, appraisement, stay of execution, reinstatement and notice of election or intention to mature or declare due the indebtedness secured hereby (except such notices as are specifically provided for herein); (b) all rights and periods of redemption provided under applicable law (including without limitation, California Code of Civil Procedure sections 580 and 726); (c) any right to require the Bank to proceed against any Trustor before any other, or to pursue any other remedy; (d) presentment, protest and notice of protest, demand and notice of non-payment, demand for performance, notice of sale, and advertisement of sale; and (e) any and all claims and defenses against the Lender and any assignee of the Lender.  To the full extent permitted by law, the Trustor shall not have or assert any right under any statute or rule of law pertaining to the administration of estates of decedents or other matters whatever to defeat, reduce or affect the right

of the Lender under the terms of this Deed of Trust to a sale of the Property, for the collection of the secured indebtedness without any prior or different resort for collection, or the right of the Lender under the terms of this Deed of Trust to the payment of the indebtedness secured hereby out of the proceeds of sale of the Property in preference to every other claimant whatsoever. The Trustor waives any rights it may have under California Civil Code section 2822.

**13.9     Legislation or Regulation Affecting Lender's Rights.**

If enactment or expiration of applicable laws or regulations has the effect of rendering any provision of the Note, this Deed of Trust or any of the Loan Documents unenforceable according to its terms, the Lender, at its option, may require immediate payment in full of all sums secured by this Deed of Trust and may invoke all remedies permitted herein.

**13.10     Governing Law.**

The Note and this Deed of Trust shall be governed by the laws and regulations of the State of California.

**13.11     Venue.**

Any and all disputes between the parties which may arise pursuant to this Deed of Trust shall be heard and determined before an appropriate federal or state court located in Los Angeles, California. The parties hereto acknowledge that such courts have the jurisdiction to interpret and enforce the provisions of this Deed of Trust, and the parties waive any and all objections that they may have as to jurisdiction or venue in any of the above courts.

**13.12     Statement of Obligation.**

The Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil State of California. That maximum amount is currently $30.00.

**13.13     Loan Charges.**

If a law which applies to the Note secured by this Deed of Trust and which sets maximum loan charges is finally interpreted so that the interest or other loan charges collected or to be collected in connection with such loan exceed the permitted limit, then any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit.

**13.14     Transfer of Information.**

The Trustor agrees that the Lender may provide information relating to the Loan Documents to the Lender's parent, affiliates, subsidiaries and service providers, as well as to all credit reporting agencies.

**13.15     Authority.**

With the intent to be legally bound, each of the undersigned hereby covenants and acknowledges that he or she (a) has read each of the terms set forth herein, (b) that the undersigned has the authority to execute the Loan Documents, including but not limited to this Deed of Trust, on behalf of the Trustor, and

(c) expressly consents and agrees that the Trustor shall be bound by all terms and conditions contained herein.

### 13.16    Caption Headings.

Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

### 13.17    Merger.

There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of the Lender in any capacity, without the written consent of the Lender.

### 13.18    Joint Participation.

The Trustor has materially participated in the preparation of the Loan Documents, which are a product of the joint effort and cooperation of the parties. In the event of any ambiguity and question relating to any provision of the Loan Documents entered into with regard to the transaction, said ambiguity shall not be construed against any party.

### 13.19    Representation of Counsel.

The Trustor is sophisticated and has been represented or has been encouraged to seek representation by counsel. If the Trustor elects against obtaining the advice of counsel, such an election shall constitute a waiver, and as such, the presumptions of California Civil Code section 1654 relating to the interpretation of contracts against the drafter of any particular clause, are waived.

### 13.20    Transfer of Information.

Trustor agrees that the Lender may provide information relating to the Loan Documents to the Lender's parent, affiliates, subsidiaries and service providers, as well as to all credit reporting agencies.

### 13.21    Severability.

If a court of competent jurisdiction finds any provision of this Deed of Trust to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Deed of Trust in all other respects shall remain valid and enforceable. The validity, legality or enforceability of any of the Loan Documents shall not be affected even if one or more of the provisions of the Loan Documents is held to be invalid, illegal or unenforceable in any respect.

### 13.22    Successors and Assigns.

Subject to the limitations stated in this Deed of Trust pertaining to the transfer of the Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than the Trustor, the Lender, without notice to the Trustor, may deal with the Trustor's successors with reference to this Deed of Trust

and the indebtedness by way of forbearance or extension or acceptance of payments without releasing the Trustor from the obligations of this Deed of Trust or liability under the Note.

**13.23**   **Trustor's Copy.**

Trustor hereby acknowledges receipt of copies of the Note, this Deed of Trust, and all other Loan Documents.

BY SIGNING BELOW Trustor accepts and agrees to the terms and covenants contained in this Deed of Trust.

TRUSTOR:

Jamie Mazur, a single man

*Jamie Mazur*

*[Signatures must be notarized]*

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of Los Angeles )

On _10-23-2023_, before me, _Ariel Mansell_, a Notary Public, personally appeared **Jamie Mazur**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

ARIEL MANSELL
Notary Public - California
Los Angeles County
Commission # 2372312
My Comm. Expires Sep 20, 2025

## EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1: (APN: 4370-014-025)

LOT PORTION OF LOT 6 OF TRACT NO. 10798, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 377 PAGES 36 AND 37 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST WESTERLY CORNER OF SAID LOT 6; THENCE NORTH 89° 55' 46" EAST ALONG THE NORTHERLY LINE OF SAID LOT, 1.05 FEET; THENCE SOUTH 18° 21' 48" EAST PARALLEL WITH THE WESTERLY LINE OF SAID LOT 263.24 FEET; THENCE NORTH 61° 40' 00" EAST, 94.96 FEET, MORE OR LESS, TO A POINT IN THE EASTERLY LINE OF SAID LOT, SAID EASTERLY LINE ALSO BEING THE WESTERLY LINE OF BEL-AIR ROAD 32 FEET IN WIDTH, SAID POINT BEING DISTANT NORTHERLY 88.82 FEET MEASURED ALONG A CURVE CONCAVE EASTERLY, HAVING A RADIUS OF 89 FEET, FROM THE SOUTHEAST CORNER OF SAID LOT; THENCE SOUTHERLY ALONG SAID CURVE 88.82 FEET TO SAID SOUTHEAST CORNER; THENCE SOUTH 66° 07' 18" WEST ALONG THE SOUTHERLY LINE OF SAID LOT, 139.21 FEET TO THE SOUTHWEST CORNER OF SAID LOT; THENCE NORTH 18° 21' 48" WEST ALONG THE WESTERLY LINE OF SAID LOT, 333.42 FEET TO THE POINT OF BEGINNING.

PARCEL 2: (APN: 4370-013-036)

THAT PORTION OF LOT 7 OF TRACT 15024, AS PER MAP RECORDED IN BOOK 394 PAGES 47 AND 48 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHERLY LINE OF SAID LOT 7 DISTANT THEREON SOUTH 89° 55' 46" WEST 20.39 FEET FROM THE SOUTHEAST CORNER OF SAID LOT; THENCE NORTH 11° 08' 37" EAST 101.75 FEET; THENCE SOUTH 78° 51' 14" WEST, 519.55 FEET, MORE OR LESS TO THE ANGLE POINT IN SAID SOUTHERLY LINE, SAID ANGLE POINT BEING THE WESTERLY TERMINUS OF THAT CERTAIN COURSE SHOWN ON MAP OF SAID TRACT NO. 15024 AS "NORTH 89° 55' 46" EAST 510.48 FEET"; THENCE NORTH 89° 55' 46" EAST ALONG SAID SOUTHERLY LINE 490.09 FEET TO THE POINT OF BEGINNING.

# EXHIBIT 3

# SN Servicing Corporation
## Competitive Marketing Analysis

Purpose: This report is not an appraisal or a home inspection. Rather, it is designed to enable the real estate broker to conduct a diligent analysis of the subject property's condition, competition, and future marketability. Based on this Analysis, the broker is to estimate the subject property's:

☒ Most Likely Sales Price "As Is" and Most Likely sales Price "With Repairs & Improvements," and
☒ Most Likely Net Price "As Is" and Most Likely Net Price "With Repairs & Improvements."

assuming a reasonable marketing time, not to exceed 120 days. (Refer to definitions on page 3 of the form. )

Inspection Date: 4/9/25

Lockbox Code:

File No.:

Property Address: 1811 BEL AIR ROAD

City, State, Zip: LOS ANGELES, CA 90077

Homeowner(s): Jamie Mazur

Home Phone:

Work Phone:

CMA Requested by (Co. & Contact): SN Servicing, Audra Daniels

Requesting Co. Address: 323 Fifth Street

City, State, Zip: Eureka, CA 95501    Fax #: (916) 231-2415

E-mail: Adaniels@snsc.com

Phone: (800) 603-0836 ext. 2671

Real Estate Firm & Contact: Ashleigh Rader, Compass

Real Estate Firm Address: 680 E Colorado Blvd #400

City, State, Zip: Pasadena, CA 91101

Agent Preparer (if other than contact): __

E-mail: ashleighrader@compass.com

Phone No.: 203.822.2131

Fax No.:

Phone No.:

Form of Ownership: ☐Fee Simple    ☐Leasehold    Type: ☐Condo  ☐Coop  ☐PUD  ☐Single Family  ☐Other
Occupant: ☐Homeowner    ☐Tenant    ☐Vacant
Indicate any personal property that remains (e.g. refrigerator, range, lighting fixtures, ceiling fans, etc.)  fully furnished

Is the subject currently listed? ☒Yes  ☐No    Listing Company/Agent Listed for Lease: Weronika Sznajder, Crosby Doe Assoc.
Describe the most probable means of financing and terms for the subject:
Are points customarily paid by the seller on the most probable financing? ☐Yes  ☒No  If yes, how long?
Comment on any other financing concessions that are necessary to enhance the sale of the subject:
Do you anticipate any issues that would affect the ability to secure financing for the subject property? (e.g., condition, zoning, environmental,
HOA, etc.) ☐Yes  [X] No    If yes, comment:
*Note: The above financing information should be carried over to the Marketing Strategy and Value Analysis sections on page 3 of this form.*

What repairs & improvements (R&I) are necessary to secure or obtain financing as indicated in the Financing section above and/or are recommended to enhance the subject's marketability. (Recommended items should increase the subject's value and/or lower the marketing time.) Indicate specific items and their estimated costs to cure.

| Interior Items | R&I Estimates | Exterior Items | R&I Estimates |
|---|---|---|---|
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| Total Interior: | $ | Total Exterior: | $ |

### Total R&I  $  N/A
(Add the Total Interior $ and Total Exterior $)
Estimate the contributory value (if any) of the TOTAL R & I to the Most Likely Sales Price . . . . . . . . . $
Note: The above recommended R&I items and costs should be carried over to the MARKETING STRATEGY and VALUE ANALYSIS sections on page 3 of this form.

List all required and customary inspections (e.g., municipal, certificate of occupancy, environmental, etc.)
Required:  National Hazard Disclosure (~$100)
Customary:
Are there any visible/known problem areas that would warrant additional inspections (e.g., structural, etc.)?  None evident from the street or listing photos
List required disclosures if any:  Wildfire Advisory, Transfer Disclosure Statement
Subject's location type: ☐Urban  [X]Suburban  ☐Distant suburban  ☐Rural  ☐Farm  ☐Resort
Market Area Price Range: $ 1M to $ 30M Property Values Are: ☐Increasing  ☐Stable  [X]Declining
Marketing Time (list to contact): [X]Up to 120 days  [X]121- 180 days  ☐Over 180 days

Number of closed comparable sales in market area in the last six months:     O
Number of competing listing in subject price range:    1
Availability of competing listings:          ☐ Shortage          [x] In balance          ☐ Oversupply
Type of competing listings: (est. total should =100%): ___%New Homes **100** Resale ___% REO/Foreclosure ___% Corporate
Describe any marketing concession/incentives being offered on competing properties that may adversely affect the subject's value:
Recommend any marketing concessions/incentives that should be offered for the subject:


The subject property is an outlier on all counts for both the street and immediate area, including lot size, home size, architectural style and bedroom/bathroom count. The homes in the subject neighborhood tend to be much larger, traditional homes on 1+ acre lots (think Fresh Prince of Bel Air). The market has slowed down considerably, largely due to insurance uncertainty. I do expect this property to take longer to sell, due to the architectural style, bedroom count and lot size. It is on upper Bel Air Rd, closer to the reservoir, which is less desirable than lower Bel Air.

The property is currently listed for rent at $18k/month with Weronika Sznajder at Crosby Doe & Associates. An inquiry to the listing agent yielded the information that the homeowner "has a friend staying there at the moment, so it's hard to show until the end of April". As California is a very tenant-friendly state, ideally you don't want to deal with a tenant in place. You may wish to notify the listing agent right away that the property owner of record has changed, before a lease is signed. Crosby Doe runs a professional brokerage with a solid reputation, and I expect they will cancel the lease listing without fanfare.

There is currently a hired, uniformed security guard stationed full-time in front of the property.

| ITEM | SUBJECT | LISTING #1 | LISTING #2 | LISTING #3 |
|---|---|---|---|---|
| Address, City | 1811 Bel Air Rd | 10498 Sandal Ln, | 1632 Bel Air Rd | 1750 N Beverly Glen Blvd |
| Proximity to Subject | | 0.4 miles | 0.3 miles | 0.5 miles |
| Original List Price | | $5,250,000 | $4,650,000 | $2,695,000 |
| Current List Price | | $2,950,000 | $4,650,000 | $2,495,000 |
| Last Price Change (date) | | 4/3/25 | N/A | 4/8/25 |
| D.O.M.(from original list date) | | 117 | 51 | 150 |
| Style | Modern | Modern | Spanish | Contemporary |
| Car Storage/Type | Carport | Carport | Garage | Garage |
| Approximate Age | 1953 | 1957 | 1969 | 1924 |
| Lot Size | 8,427 SF | 10,053 SF | 14,052 SF | 9,844 SF |
| Appx. Gross Living Area | 1,864    Sq.Ft. | 1,262    Sq. Ft. | 4,213    Sq. Ft. | 2,959    Sq.Ft. |
| Above Grade Room Count | Tot. 2 Brms. 2 Baths | Tot. 3 Brms. 2 Baths | Tot. 4 Brms. 5 Baths | Tot.  Brms.  Baths |
| Basement Area | no | no | no | no |
| Basement Finished | | | | |
| Deck/Patio | patio | patio | patio | patio |
| Water/Sewer Features | Well☐Septic☐Sewer☒ | Well☐Septic☐Sewer☒ | Well☐Septic☐Sewer☒ | Well☐Septic☐Sewer☒ |
| Pool/Spa | no | no | no | yes |
| Type Air Conditioning | central | n/a | central | central |
| Type Heating System | central | central | central | central |
| Location | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair |
| Lot Characteristics | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair |
| View | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair |
| Floor Plan Utility | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair |
| Ext. Condition Appeal | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☒Good ☐Avg. ☐Fair | ☐Good ☒Avg. ☐Fair |
| Int. Condition Appeal | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☒Good ☐Avg. ☐Fair | ☐Good ☒Avg. ☐Fair |
| Sale Type (REO, Fair Market, Short Sale) | | Fair market | Fair market | Fair market |
| Overall Rating of Listings as compared to subject: | | ☐Plus ☒Equal ☐Minus | ☒Plus ☐Equal☐Minus | ☐Plus ☒Equal☐Minus |

Describe significant value-related differences between the subject and the competing listings (including condition, location appeal, amenities, deferred maintenance, utility, view market conditions and days-on-market) and explain any seller financing, discount points, and/or other concessions being offered.  Also, indicate if the contact or agent has inspected the competing listing's interior.

Listing # 1:  Inspected?          ☐ Yes ☒ No  Comments:   Listing agent reports it's "hard to sell a modern house in this neighborhood"
Listing # 2:  Inspected?          ☐ Yes ☒ No  Comments:
Listing # 3:  Inspected?          ☐ Yes ☒ No  Comments:   Listing agent reports market is slow. He's surprised they haven't had many showing requests.

| ITEM | SUBJECT | SALES #1 | SALES #2 | SALES #3 |
|---|---|---|---|---|
| Address, City | 1811 Bel Air Rd<br>Los Angeles, CA 90077 | 1991 Stradella Rd<br>Los Angeles, CA 90077 | 1742 N Beverly Glen Blvd<br>Los Angeles, CA 90077 | 2181 N Beverly Glen Blvd,<br>Los Angeles, CA 90077 |
| Proximity to Subject | | 0.5 miles | 0.5 miles | 1.0 miles |
| Original List Price | | $2,795,000 | $1,850,000 | $2,199,000 |
| Final List Price | | $2,670,000 | $1,850,000 | $1,995,000 |
| Sales Price | | $2,275,000 | $1,800,000 | $1,925,000 |
| Under Contract Date | | 10/22/24 | 11/15/24 | 10/18/24 |
| Closing Date | | 11/8/24 | 12/2/24 | 11/22/24 |
| D.O.M.(from original list date) | | 152 | 32 | 113 |
| Style | Modern | Modern | Cottage | Cape Cod |
| Car Storage/Type | Carport | Garage | Parking area | Garage |
| Approximate Age | 1953 | 2000 | 1926 | 1918 |
| Lot Size | 8,427 SF | 18,818 SF | 10,257 SF | 13,765 |
| Appx. Gross Living Area | 1,664    Sq.Ft. | 4,185    Sq. Ft. | 1,504    Sq. Ft. | 3,778    Sq.Ft. |
| Above Grade Room Count | Tot. 2 Brms. 2 Baths | Tot. 4 Brms. 4 Baths | Tot. 3 Brms. 2 Baths | Tot. 4 Brms. 3 Baths |
| Basement Area | No | No | No | No |
| Basement Finished | | | | |
| Deck/Patio | Patio | Patio | Patio | Patio |
| Water/Sewer Type | Well☐Septic☐Sewer☒ | Well☐Septic☐Sewer☒ | Well☐Septic☐Sewer☒ | Well☐Septic☐Sewer☒ |
| Pool/Spa | No | Shared tennis court | Yes | |
| Type Air Conditioning | Central | Central | Central | Central |
| Type Heating System | Central | Central | Central | Central |
| Location | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair |
| Lot Characteristics | ☐Good ☒Avg. ☐Fair | ☐Good ☐Avg. ☒Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair |
| View | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair |
| Floor Plan Utility | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair |
| Ext. Condition Appeal | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☐Avg. ☒Fair |
| Int. Condition Appeal | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☒Avg. ☐Fair | ☐Good ☐Avg. ☒Fair |
| Sale Type (REO, Fair Market, | | Fair market | Fair market | Fair market |

| Short Sale) | | | | |
|---|---|---|---|---|
| Overall Rating of Sales as | compared to subject | ☐Plus [x]Equal ☐Minus | ☐Plus [x]Equal ☐Minus | ☐Plus ☐Equal [x]Minus |

Describe significant value-related differences between the subject and pending/closed sales (including condition, location, appeal, amenities, deferred maintenance, utility, view, market conditions and days-on-market) and explain any seller financing, discount points, and/or other concessions which were paid.  Also, indicate if the contact or agent has inspected the comparable sale's interior.

Sales # 1:   Inspected?      ☐ Yes  [x] No   Comments:   Lower quality finishes than subject house, but larger
Sales # 2:   Inspected?      ☐ Yes  [x] No   Comments:   Very quaint, priced to sell quickly
Sales # 3:   Inspected?      ☐ Yes  [x] No   Comments:   Weird aesthetic inside, especially for SoCal

Comment on significant features of the subject's amenities and floor plan/design (appeal, flow, functionality, etc.) and describe any positive/negative influence on marketability:   The house is a vibe, in a good way. Were it located in Laurel Canyon or Los Feliz, it would hold a lot of appeal. Bel Air buyers are looking for large, traditional homes on large lots with pools. Finding comps is tricky!

Comment on any other known items (e.g., real estate, taxes, special assessments, HOA/Condominium/Cooperative fees or restrictions, future plant closings, environmental hazards, etc.) which may affect the marketing and eventual selling price of the subject property and that are not mentioned in any other section of this form:   The insurance landscape in LA County continues to be very difficult to navigate. A loan cannot be obtained without insurance, but  insurance can be hard to come by in the hills.

| VALUE ANALYSIS | "AS IS" | WITH REPAIRS & IMPROVEMENTS" ("AS IS" + CONTRIBUTORY VALUE AS INDICATED ON PG. 1) |
|---|---|---|
| **Most Likely Sales Price (MLSP)** (marketing time not to exceed 120 days) | $ 2,500,000 | $ |
| Cost of Repairs & Improvements (subtract) | $ | $ |
| Financing Concessions (subtract) | $ | $ |
| Marketing Concessions/incentives (subtract) | $ | $ |
| **Most Likely Net Price** | $ | $ |

**Suggested Initial Listing Prices**    $ 2,450,000  (As Is)    $___    (With R&I)
_____

**Additional Comments:**   Agent did not conduct an interior inspection of the property. Current condition is unknown. Listing photos look promising, however!


File No.:   ___
Real Estate Firm Tax ID No.:   ___
Contact Name:
Contact Signature: _____

Real Estate Firm:   Compass
Date of Inspection:   4/9/25
Agent Preparer Name:  Ashleigh Rader
Agent Preparer Signature: _____  ARader

# EXHIBIT 4



**TRUSTEE'S SALE GUARANTEE**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE AND THE CONDITIONS ATTACHED HERETO AND
MADE A PART OF THIS GUARANTEE

**WFG NATIONAL TITLE INSURANCE COMPANY**
a South Carolina Corporation, herein called the Company

GUARANTEES

the Assured named in Schedule A of this Guarantee

against loss or damage not exceeding the liability amount stated in Schedule A sustained by the Assured by reason
of any incorrectness in the assurances set forth in  Paragraph 3 of Schedule A.

**In Witness Whereof**, WFG NATIONAL TITLE INSURANCE COMPANY has caused this guarantee to be signed
and sealed by its duly authorized officers as of Date of Guarantee shown in Schedule A.

**WFG NATIONAL TITLE INSURANCE COMPANY**

By: _____
President

ATTEST: _____
Secretary

WFG Form No. 3174406
CLTA Guarantee Form No. 22 (06-05-14) – Trustee's Sale Guarantee
Revised 1-07-2017

### TRUSTEE'S SALE GUARANTEE

### SCHEDULE A

| | | | | |
|---|---|---|---|---|
| Guarantee No.: | **3174406-7831115** | | Liability: | **$2,212,500.00** |
| File No.: | **2516539CAD** | | | |
| Your No.: | **24-12028** | | | |
| Date of Guarantee: | **September 9, 2024** | | Fee: | **$2,006.00** |

1. Name of Assured:

   **Prestige Default Services, LLC and U.S. Bank Trust National Association, as Trustee of Cabana Series V Trust**

2. The estate or interest in the Land that is the subject of this Guarantee is:

   **Fee Simple**

3. Assurances:

   According to the Public Records as of the Date of Guarantee,

   a. Title to the estate or interest is vested in:

   **Jamie Mazur aka Jamie A. Mazur, a single man**

   b. Title to the estate or interest is subject to defects, liens or encumbrances shown in Schedule B which are not necessarily shown in the order of their priority.

   c. The Land referred to in this Guarantee is situated in the State of California, County of Los Angeles, and is described as follows:

   **See Exhibit "A" attached hereto and made a part hereof**

   d. Relative to the Mortgage shown in Paragraph 10 of Schedule B:

   i. For the purposes of California Civil Code §§ 2924b (b) and (d), the address of the trustor or mortgagor as shown in the Mortgage is:

   **30 DAY**
       **Jamie Mazur**
       **101 Ocean Ave #E701**
       **Santa Monica, CA 90402**

       **Jamie Mazur**
       **1811 Bel Air Road**
       **Los Angeles, CA 90077**

   ii. The names and addresses of all persons who have recorded requests for a copy of notice of default and for a copy of notice of sale as provided by California Civil Code §§ 2924b (a), (b) and (d) are:

   **None**

   iii. The names and addresses of all additional persons who are entitled to receive a copy of notice of default and a copy of notice of sale as provided by California Civil Code §§ 2924b (c) (1), (2) and (3) are:

   **Jamie A. Mazur**
   **101 Ocean Ave #E701**
   **Santa Monica, CA 90402**

   **Affects: Vesting**

   **Jamie A. Mazur**
   **1811 Bel Air Road**
   **Los Angeles, CA 90077**

   **Affects: Vesting**

   **Jamie Mazur**
   **1935 East 7th Street**
   **Los Angeles, CA 90021**

**Affects: Vesting**

**Jamie A. Mazur**
**1935 East 7th Street**
**Los Angeles, CA 90021**

**Affects: Vesting**

**Jamie A. Mazur**
**9100 Wilshire 200W**
**Beverly Hills, CA 90212-3445**

**Affects: Vesting**

**Jamie Mazur**
**9100 Wilshire 200W**
**Beverly Hills, CA 90212-3445**

**Affects: Vesting**

**Jamie A. Mazur**
**3231 Ocean Park Blvd Ste 120**
**Santa Monica, CA 90405-3231**

**Affects: Vesting**

**Jamie Mazur**
**3231 Ocean Park Blvd Ste 120**
**Santa Monica, CA 90405-3231**

**Affects: Vesting**

**Jamie Mazur**
**2314 La Mesa Dr**
**Santa Monica, CA 90402**

**Affects: Vesting**

**Jamie Mazur**
**2314 La Mesa Dr**
**Santa Monica, CA 90402**

**Affects: Vesting**

**Jonathan H Greene, PHD**
**1749 S Wooster St**
**Los Angeles, CA 90035**

**Affects: Item #12**

**Finance California**
**C/o Steven C. Huskey, Esq.**
**Epport, Richman & Robbins, LLP**
**1875 Century Park East, Suite 800**
**Los angeles, CA 90067**

**Affects: Item #15, #17**

**Finance California**
**Attn: Jason Wiener**
**15604 Vandorf Place**
**Encino, CA 91436**

**Affects: Item #15, #17**

**The June Foundation, a California Corporation**
**C/o Finance California**
**Gerald Wiener, CEO**
**15604 Vandorf Place**
**Encino, CA 91436**

**Affects: Item #15, #17**

iv.    The names and addresses of all associations defined in California Civil Code §§ 4080 or 6528 that have recorded a request for notice that are entitled to receive a copy of any trustee's deed upon sale as provided by California Civil Code § 2924b (f) are:

**None**

v.    The names and addresses of all state taxing agencies that are entitled to receive a copy of notice of sale as provided by California Civil Code § 2924b (c) (3) are:

**State of California**
**Franchise Tax Board**
**Sacramento CA 95812-2952**

**Affects: Item #11, #14, #16**

**State of California**
**Franchise Tax Board**
**C/o Special Procedures Section**
**PO Box 2952**
**Sacramento CA 95812-2952**

**Affects: Item #11, #14, #16**

**State of California**
**California Department of Tax and Fee Administration**
**PO Box 942879**
**Sacramento, CA 94279-0055**

**Affects: Item #13**

vi.    The address of the Internal Revenue Service to which a copy of notice of sale is to be mailed as provided by California Civil Code § 2924b (c) (4) is:

**Not Applicable**

vii.    The name of each city in which the Land is located is:

**Los Angeles**

If not in a city, each public notice district in which the land is located is:

**Not Applicable**

viii.    The name of a newspaper of general circulation for the publication of a notice of sale as required by California Civil Code § 2924f (b) (1) is:

**Daily Commerce**
**Published: Monday - Friday**

### TRUSTEE'S SALE GUARANTEE

### SCHEDULE B

1.    Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes, to be levied for the fiscal year 2024-2025.

**TAXES PD**

2.    General and Special City and/or County taxes, including any personal property taxes and any assessments collected with taxes, for the fiscal year 2023-2024:

| | |
|---|---|
| 1st Installment: | $18,472.84, Paid |
| 2nd Installment: | $18,472.84, Paid |
| Parcel No.: | 4370-014-025 |
| Code Area: | 00067 |

Said matter affects: Parcel I

3.    General and Special City and/or County taxes, including any personal property taxes and any assessments collected with taxes, for the fiscal year 2023-2024:

| | |
|---|---|
| 1st Installment: | $846.43, Paid |
| 2nd Installment: | $846.42, Paid |
| Parcel No.: | 4370-013-036 |
| Code Area: | 00067 |

Said matter affects: Parcel II

4.    Assessments, if any, for Community Facility Districts affecting said land which may exist by virtue of assessment map or notices filed by said districts. Said assessments are collected with the County Taxes.

5.    The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code of the State of California.

6.    Said land disclosed herein is also known by the County Tax Assessor as the following parcel number(s):

4370-014-025, 4370-013-036

7.    Covenants, conditions, or restrictions, if any, appearing in the Public Records; but omitting, except to the extent permitted by any applicable federal or state law, covenants or restrictions, if any, based on race, color, religion, sex, familial status, national origin, handicap, sexual orientation, marital status, ancestry, source of income, disability, medical condition, or other unlawful basis.

8.    Any easements, servitudes, or senior encumbrances appearing in the Public Records.

9.    Any lease, grant, exception, or reservation of mineral rights appearing in the Public Records.

**SUBJECT DOT**

10.    Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

| | |
|---|---|
| Amount: | $2,212,500.00 |
| Dated: | December 20, 2019 |
| Trustor: | Jamie Mazur, a single man |
| Trustee: | Western Resources Title |
| Beneficiary: | Mortgage Electronic Registration Systems, Inc., solely as nominee for the Lender |
| Lender: | Impac Mortgage Corp. |
| Recorded: | December 24, 2019 |
| Instrument No.: | 20191440188, of Official Records |

The beneficial interest under said Deed of Trust was:
Assigned to:        CitiBank, National Association, as Trustee for CMLTI Asset Trust
By:                Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for Impac
Group, its successors and assigns

By Assignment Recorded:    December 17, 2020
As Instrument No.:    20201679697, of Official Records

A Substitution of Trustee which names Prestige Default Services as trustee,
recorded January 7, 2021, as Instrument No. 20210028653, of Official Records.

The beneficial interest under said Deed of Trust was:
Assigned to:    U.S. Bank Trust National Association, as Trustee of The Igloo Series V Trust
By:    CitiBank, National Association, as Trustee for CMLTI Asset Trust, by Meridian Asset
Services, LLC, its Attorney-in-Fact
By Assignment Recorded:    November 23, 2021

**AITNO**
As Instrument No.:    20211742247, of Official Records

**The beneficial interest under said Deed of Trust was:**
**Assigned to:    US Bank Trust National Association as Trustee for Cabana Series V Trust**
**By:    US Bank Trust National Association as Trustee of The Igloo Series V Trust, by Meridian**
**Asset Services, LLC, its Attorney-in-Fact**
**By Assignment Recorded:    March 1, 2022**
**As Instrument No.:    20220238631, of Official Records**

**SOT**
**A Substitution of Trustee which names Prestige Default Services, LLC as trustee,**
**recorded September 9, 2024, as Instrument No. 20240607021, of Official Records.**

**NOD**
**A Notice of Default recorded September 9, 2024, as Instrument No. 20240607022, of Official Records.**

**TAX LNS**
11.  A tax lien for the amount shown, and other amounts due thereunder, in favor of the State of California in the amount of
$82,355.69, filed by The Franchise Tax Board of the State of California, Taxpayer Jamie A. Mazur, Certificate No.
10012657051, recorded January 21, 2010, as Instrument No. 20100090207, of Official Records.

A extend tax lien for the amount shown, and other amounts due thereunder, in favor of the State of California in the amount
$93,549.85, filed by The Franchise Tax Board of the State of California, Taxpayer Jamie A. Mazur, Certificate No.
19355669758, recorded December 26, 2019, as Instrument No. 20191442253, of Official Records.

**SR JDGMT**
12.  An Abstract of Judgment recorded July 27, 2017, as Instrument No. 20170845827, of Official Records:

Court:    Superior Court of California
Case No. :    161WSC06050
Entry Date:    July 12, 2017
Debtor:    Jamie Mazur
Creditor:    Jonathan H Greene, PHD
Amount:    $1,925.00

**TAX LNS**
13.  A tax lien for the amount shown, and other amounts due thereunder, in favor of the State of California in the amount of
$6,931.94, filed by The California Department of Tax and Fee Administration, Taxpayer Jamie Andrew Mazur, Certificate
No. 351000, recorded September 26, 2019, as Instrument No. 20191007828, of Official Records.

14.  A tax lien for the amount shown, and other amounts due thereunder, in favor of the State of California in the amount of
$6,078.36, filed by State of California Franchise Tax Board, Taxpayer Jamie A Mazur, Certificate No. 20255691055,
recorded September 17, 2020, as Instrument No. 20201126017, of Official Records.

**JR DOT**
15.  Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

Amount:    $350,000.00
Dated:    June 17, 2021
Trustor:    Jamie Mazur, a single man
Trustee:    Finance California, a California Corporation
Lender:    Finance California, a California Corporation, and its assignees
Recorded:    June 21, 2021
Instrument No.:    20210972209, of Official Records

The beneficial interest under said Deed of Trust was:
Assigned to:    The June Foundation, a California Corporation
By:    Finance California, a California Corporation
By Assignment Recorded:    June 21, 2021
As Instrument No.:    20210972210, of Official Records

16. A tax lien for the amount shown, and other amounts due thereunder, in favor of the State of California in the amount of $33,675.79, filed by The Franchise Tax Board of the State of California, Taxpayer Jamie A Mazur, Certificate No. 23088693382, recorded April 14, 2023, as Instrument No. 20230238536, of Official Records.

17. Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

| | |
|---|---|
| Amount: | $575,000.00 |
| Dated: | October 17, 2023 |
| Trustor: | Jamie Mazur, a single man |
| Trustee: | Finance California, a California Corporation |
| Lender: | Finance California, a California Corporation, and its assignees |
| Recorded: | October 30, 2023 |
| Instrument No.: | 20230741554, of Official Records |

The beneficial interest under said Deed of Trust was:

| | |
|---|---|
| Assigned to: | Anil Maloo in the amount of $125,000.00 (21.74%), Continental Pearl (USA) Inc., a California Corporation, in the amount of $125,000.00 (21.74%), Michael Moshi in the amount of $125,000.00 (21.74%), George Boris in the amount of $100,000.00 (17.39%), and Lauren Moshi in the amount of $100,000.00 (17.39%) |
| By: | Finance California, a California Corporation |
| By Assignment Recorded: | October 30, 2023 |
| As Instrument No.: | 20230741555, of Official Records |

18. Any claim arising out of a bankruptcy proceeding that is not disclosed by notice pursuant to U.S.C. § 549 (c).

NOTE:  If the property which is the subject of this report or guarantee has been used, is being used, or was acquired with the intent that it be used in connection with a marijuana related enterprise, including but not limited to the cultivation, storage, distribution, transport, manufacture or sale of marijuana and/or products containing marijuana, the federal government (or the state or local government if such use is deemed to be noncompliant with state or local law) may claim a preeminent right to the property automatically effective as of the date of the use which it deems illegal. Nothing in this report or guarantee provides assurances against the exercise of such a governmental forfeiture, regulatory or police power, and further, Company expressly reserves the right to decline to close or insure such a property following the completion of any litigation or foreclosure action conducted on said property. You are advised to consult your legal counsel on whether it is required, advisable, or inadvisable to give notice to the Federal and/or State government in order to address potential forfeiture issues.

## EXHIBIT "A"

## LEGAL DESCRIPTION

REAL PROPERTY IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

PARCEL I:

THAT PORTION OF LOT 6 OF TRACT NO. 10798, AS PER MAP RECORDED IN BOOK 377 PAGES 36 AND 37 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST WESTERLY CORNER OF SAID LOT 6; THENCE NORTH 89° 55' 46" EAST ALONG THE NORTHERLY LINE OF SAID LOT, 1.05 FEET; THENCE SOUTH 18° 21' 48" EAST PARALLEL WITH THE WESTERLY LINE OF SAID LOT 263.24 FEET; THENCE NORTH 61° 40' 00" EAST, 94.96 FEET, MORE OR LESS, TO A POINT IN THE EASTERLY LINE OF SAID LOT, SAID EASTERLY LINE ALSO BEING THE WESTERLY LINE OF BEL-AIR ROAD 32 FEET IN WIDTH, SAID POINT BEING DISTANT NORTHERLY 88.82 FEET MEASURED ALONG A CURVE CONCAVE EASTERLY, HAVING A RADIUS OF 89 FEET, FROM THE SOUTHEAST CORNER OF SAID LOT; THENCE SOUTHERLY ALONG SAID CURVE 88.82 FEET TO SAID SOUTHEAST CORNER; THENCE SOUTH 66° 07' 18" WEST ALONG THE SOUTHERLY LINE OF SAID LOT, 139.21 FEET TO THE SOUTHWEST CORNER OF SAID LOT; THENCE NORTH 18° 21' 48" WEST ALONG THE WESTERLY LINE OF SAID LOT, 333.42 FEET TO THE POINT OF BEGINNING.

PARCEL II:

THAT PORTION OF LOT 7 OF TRACT 15024, AS PER MAP RECORDED IN BOOK 394 PAGES 47 AND 48 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHERLY LINE OF SAID LOT 7 DISTANT THEREON SOUTH 89° 55' 46" WEST 20.39 FEET FROM THE SOUTHEAST CORNER OF SAID LOT; THENCE NORTH 11° 08' 37" EAST 101.75 FEET; THENCE SOUTH 78° 51' 14" WEST, 519.55 FEET, MORE OR LESS TO THE ANGLE POINT IN SAID SOUTHERLY LINE, SAID ANGLE POINT BEING THE WESTERLY TERMINUS OF THAT CERTAIN COURSE SHOWN ON MAP OF SAID TRACT NO. 15024 AS "NORTH 89° 55' 46" EAST 510.48 FEET"; THENCE NORTH 89° 55' 46" EAST ALONG SAID SOUTHERLY LINE 490.09 FEET TO THE POINT OF BEGINNING.

NOTE:  For information purposes only, for which the Company assumes no liability for any inaccuracies or omissions, the purported street address of said land as determined from the latest County Assessor's Roll is:

1811 BEL AIR ROAD, Los Angeles, CA  90077

**WFG** National Title Insurance Company®
a Williston Financial Group company

## WFG NATIONAL TITLE INSURANCE COMPANY

## <u>EXCLUSIONS FROM COVERAGE</u>

1.  Except to the extent of the assurances set forth in Paragraph 3 of Schedule A, the Company assumes no liability for loss or damage by reason of any law, ordinance, governmental regulation or any other police power adopted or promulgated by any federal or state government authority purporting to regulate non-judicial foreclosures or any related duties, whether or not disclosed by the Public Records at the Date of Guarantee.

2.  Notwithstanding any assurances set forth in Paragraph 3 of Schedule A, the Company assumes no liability for loss or damage by reason of the following:

(a)  Defects, liens, encumbrances, adverse claims or other matters affecting the title to any property beyond the lines of the Land expressly described in the description set forth in Schedule A of this Guarantee, or title to streets, roads, avenues, lanes, ways or waterways to which such Land abuts, or the right to maintain therein vaults, tunnels, ramps or any structure or improvements; or any rights or easements therein, unless such property, rights or easements are expressly and specifically set forth in said description.

(b)  Defects, liens, encumbrances, adverse claims or other matters, whether or not shown by the Public Records (1) that are created, suffered, assumed or agreed to by one or more of the Assureds; (2) that result in no loss to the Assured; or (3) that do not result either in the invalidity of any non-judicial proceeding to foreclose the lien of the Mortgage or the failure of any such non-judicial foreclosure proceeding to divest a lien, estate or interest subordinate or subject to the lien of the Mortgage.

(c)  Defects, liens, encumbrances, adverse claims or other matters against the title, not shown by the Public Records.

(d)  The identity of any party shown or referred to in Schedule A.

(e)  The validity, legal effect or priority of any matter shown or referred to in this Guarantee.

(f)  Any law, ordinance, governmental regulation or any other police power adopted or promulgated by any county, city, or any other local government authority purporting to regulate non-judicial foreclosures or any related duties, whether or not disclosed by the Public Records at the Date of Guarantee.

(g)  (1)  Taxes or assessments of any taxing authority that levies taxes or assessments on real property; or, (2) proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not the matters excluded under (1) or (2) are shown by the records of the taxing authority or by the Public Records.

(h)  (1)  Unpatented mining claims; (2) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (3) water rights, claims or title to water, whether or not the matters excluded under (1), (2) or (3) are shown by the Public Records.

WFG Form No. 3174406
CLTA Guarantee Form No. 22 (06-05-14) – Trustee's Sale Guarantee
Revised 1-07-2017

## WFG NATIONAL TITLE INSURANCE COMPANY

### INFORMATIONAL NOTES

No assurances as set forth in Paragraph 3 of Schedule A are provided in connection with the following information and the Company assumes no liability for any inaccuracies in or omissions from the information. This information is not intended to be comprehensive and does not necessarily include all laws and regulations that might affect the contemplated foreclosure.

1.  Attention is called to Article I commencing with California Civil Code Sections 2920 et. seq, of Chapter 2, Title 14, Part 4, Division 3, that govern the actions of mortgagees, beneficiaries, mortgage servicers, trustees, and their agents with respect to non-judicial foreclosures.

2.  Attention is called to the Servicemembers Civil Relief Act (SCRA) (*50 USC §§3901 et seq.*), the Military Reservist Relief Act of 1991 (*California Military and Veterans Code §§ 800 et seq.*), and Military and Veterans Code § 408, that contain restrictions against the sale of land under a deed of trust or mortgage if the owner is entitled to the benefits of those laws.

3.  Attention is called to the Federal Tax Lien Act of 1966 (26 USC §§ 6321 et seq.), that, among other things, provides for the giving of written notice of sale in a specified manner to the Secretary of Treasury or his or her delegate as a requirement for the discharge or divestment of a Federal Tax Lien in a non-judicial sale, and establishes with respect to that lien a right in the United States to redeem the property within a period of 120 days from the date of the sale.

4.  Attention is called to California Government Code § 16187, that, among other things, provides for the giving of written notice of sale in a specified manner to the Controller of the State of California necessary for the discharge or divestment in a non-judicial sale of a Notice of Lien for Postponed Property Taxes recorded in the public records subsequent to the recording of a notice of default.

## TRUSTEE'S SALE GUARANTEE CONDITIONS

1. **Definition of Terms.**
   The following terms when used in the Guarantee mean:
   (a) the "Assured": (i) the party or parties named as the Assured in Schedule A, or on a supplemental writing executed by the Company, (ii) the duly substituted trustee of the Mortgage and (iii) the owner of the indebtedness or other obligation secured by the Mortgage.
   (b) "Land": the Land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "Land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways.
   (c) "Mortgage": the mortgage, deed of trust, trust deed, or other security instrument set forth in Paragraph 3.d. of Schedule A.
   (d) "Public Records": those records established under California statutes at Date of Guarantee for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge.
   (e) "Date of Guarantee": the Date of Guarantee set forth in Schedule A

2. **Notice of Claim to be Given by Assured.**
   The Assured shall notify the Company promptly in writing in case knowledge shall come to the Assured of any assertion of facts, or claims of title or interest that are contrary to the assurances set forth in Paragraph 3 of Schedule A and that might cause loss or damage for which the Company may be liable under this Guarantee. If prompt notice shall not be given to the Company, then all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of the Assured under this Guarantee unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

3. **No Duty to Defend or Prosecute.**
   The Company shall have no duty to defend or prosecute any action or proceeding to which the Assured is a party, notwithstanding the nature of any allegation in such action or proceeding.

4. **Company's Option to Defend or Prosecute Actions; Duty of Assured to Cooperate.**
   Even though the Company has no duty to defend or prosecute as set forth in Paragraph 3 above:
   (a) The Company shall have the right, at its sole option and cost, to institute and prosecute any action or proceeding, interpose a defense, as limited in Paragraph 4.b. or to do any other act which in its opinion may be necessary or desirable to establish the correctness of the assurances set forth in Paragraph 3 of Schedule A or to prevent or reduce loss or damage to the Assured including, but not limited to, repeating the trustee's sale proceeding. The Company may take any appropriate action under the terms of this Guarantee, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this Guarantee. If the Company shall exercise its rights under this paragraph, it shall do so diligently.
   (b) If the Company elects to exercise its options as stated in Paragraph 4.a. the Company shall have the right to select counsel of its choice (subject to the right of the Assured to object for reasonable cause) to represent the Assured and shall not be liable for and will not pay the fees of any other counsel, nor will the Company pay any fees, costs or expenses incurred by the Assured in the defense of those causes of action which allege matters not covered by this Guarantee.
   (c) Whenever the Company shall have brought an action or interposed a defense as permitted by the provisions of this Guarantee, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from an adverse judgment or order.
   (d) In all cases where this Guarantee permits the Company to prosecute or provide for the defense of any action or proceeding, the Assured shall secure to the Company the right to so prosecute or provide for the defense of any action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the Assured for this purpose. Whenever requested by the Company, the Assured, at the Company's expense, shall give the Company all reasonable aid in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or lawful act which in the opinion of the Company may be necessary or desirable to establish the correctness of the assurances set forth in Paragraph 3 of Schedule A. If the Company is prejudiced by the failure of the Assured to furnish the required cooperation, the Company's obligations to the Assured under the Guarantee shall terminate.

5. **Proof of Loss or Damage.**

(a) In addition to and after the notices required under Section 2 of these Conditions have been provided to the Company, a proof of loss or damage signed and sworn to by the Assured shall be furnished to the Company within ninety (90) days after the Assured shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the matters covered by this Guarantee which constitute the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the Assured to provide the required proof of loss or damage, the Company's obligation to the Assured under the Guarantee shall terminate.

(b) The Company may reasonably require the Assured to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Guarantee, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Assured shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Assured provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Assured to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this Guarantee as to that claim.

6. **Options to Pay or Otherwise Settle Claims:  Termination of Liability.**

In case of a claim under this Guarantee, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Guarantee or to Purchase the Indebtedness.

   i.   To pay or tender payment of the full amount of this Guarantee together with any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

   ii.  To purchase the indebtedness secured by the Mortgage for the amount owing thereon, together with any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of purchase and that the Company is obligated to pay.

When the Company so purchases such indebtedness, the owner thereof shall transfer, assign, and convey to the Company the indebtedness and the Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in Paragraphs 6.a.i. or 6.a.ii., all liability and obligations of the Company to the Assured under this Guarantee, other than to make the payment required in those paragraphs, shall terminate, including any duty to continue any and all litigation initiated by Company pursuant to Paragraph 4.

(b) To Pay or Otherwise Settle With Parties Other Than the Assured or With the Assured.

   i.   To pay or otherwise settle with other parties for or in the name of an Assured any claim assured against under this Guarantee. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

   ii.  To pay or otherwise settle with the Assured the loss or damage provided for under this Guarantee, together with any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in Paragraphs 6. b.i. or 6.b.ii., the Company's obligations to the Assured under this Guarantee for the claimed loss or damage, other than the payments required to be made, shall terminate, including any duty to continue any and all litigation initiated by Company pursuant to Paragraph 4.

**7. Limitation of Liability.**

This Guarantee is a contract of Indemnity against actual monetary loss or damage sustained or incurred by the Assured who has suffered loss or damage by reason of reliance upon the assurances set forth in Paragraph 3 of Schedule A and only to the extent herein described, and subject to the Exclusions From Coverage and Conditions of this Guarantee.

(a) The liability of the Company under this Guarantee to the Assured shall not exceed the least of:

    i.   the amount of liability stated in Schedule A;

    ii.  the amount of the unpaid principal indebtedness secured by the Mortgage as limited or as reduced under Paragraph 8 of these Conditions at the time the loss or damage assured against by this Guarantee occurs, together with interest thereon; or

    iii. the difference between the value of the estate or interest set forth in Schedule A and the value of the estate or interest subject to any defect, lien, encumbrance or other matter assured against by this Guarantee..

(b) If the Company or the Assured under the direction of the Company at the Company's expense establishes the title, or removes the alleged defect, lien or, encumbrance or cures any other matter assured against by this Guarantee in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(c) In the event of any litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom.

(d) The Company shall not be liable for loss or damage to the Assured for liability voluntarily assumed by the Assured in settling any claim or suit without the prior written consent of the Company.

**8. Reduction of Liability or Termination of Liability.**

All payments under this Guarantee, except payments made for costs, attorneys' fees and expenses pursuant to Paragraph 4 shall reduce the amount of liability pro tanto.

**9. Payment of Loss.**

(a) No payment shall be made without producing this Guarantee for endorsement of the payment unless the Guarantee has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions the loss or damage shall be payable within thirty (30) days thereafter.

**10. Subrogation Upon Payment or Settlement.**

Whenever the Company shall have settled and paid a claim under this Guarantee, all right of subrogation shall vest in the Company unaffected by any act of the Assured.

The Company shall be subrogated to and be entitled to all rights and remedies which the Assured would have had against any person or property in respect to the claim had this Guarantee not been issued. If requested by the Company, the Assured shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The Assured shall permit the Company to sue, compromise or settle in the name of the Assured and to use the name of the Assured in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the Assured the Company shall be subrogated to all rights and remedies of the Assured after the Assured shall have recovered its principal, interest, and costs of collection.

**11. Arbitration.**

Either the Company or the Assured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Assured arising out of or relating to this Guarantee, any service in connection with its issuance or the breach of a Guarantee provision, or to any other controversy or claim arising out of the transaction giving rise to this Guarantee. All arbitrable matters when the amount of liability in Schedule A is $2,000,000 or less shall be arbitrated at the option of either the Company or the Assured. All arbitrable matters when the amount of liability in Schedule A is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Assured. Arbitration pursuant to this Guarantee and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

**12. Liability Limited to This Guarantee; Guarantee Entire Contract.**

(a) This Guarantee together with all endorsements, if any, attached hereto by the Company is the entire Guarantee and contract between the Assured and the Company.  In interpreting any provision of this Guarantee, this Guarantee shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, or any action asserting such claim, shall be restricted to this Guarantee.

(c) No amendment of or endorsement to this Guarantee can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**13. Notices, Where Sent.**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this Guarantee and shall be addressed to the Company at 12909 SW 68th Parkway, Suite 350, Portland, OR 97223.  WFG National Title Insurance Company's telephone number is (800) 334-8885.



**Williston Financial Group Privacy Notice**

Williston Financial Group LLC, WFG National Title Insurance Company, and each of the affiliates listed below (collectively "WFG" or the "WFG Family") believe it is important to protect your privacy and confidences. We recognize and respect the privacy expectations of our customers. We believe that making you aware of how we collect information about you, how we use that information, and with whom we share that information will form the basis for a relationship of trust between us. This Privacy Notice provides that explanation. We reserve the right to change this Privacy Notice from time to time.

WFG's primary business is providing appraisal, title insurance, and escrow services for the sale or refinance of real property. This can be a complicated process involving multiple parties, many of whom have been selected by our customers, each filling a specialized role. In part, you have hired WFG to coordinate and smooth the passage of the information necessary for an efficient settlement or closing.

In the course of this process, WFG collects a significant amount of personal and identifying information about the parties to a transaction, including sensitive items that include but are not limited to: your contact information, including email addresses, Social Security numbers, driver's license, and other identification numbers and information; financial, bank and insurance information; information about past and proposed mortgages and loans; information about properties you currently or previously owned; your mortgage application package; and the cookie, IP address, and other information captured automatically by computer systems.

Much of this information is gathered from searches of public land, tax, court and credit records to make certain that any liens, challenges or title defects are addressed properly. Some of the information that is collected is provided by you or the computer systems you use. We also may receive information from real estate brokers and agents, mortgage brokers and lenders, and others working to facilitate your transaction, as well as information from public, private or governmental databases including credit bureaus, 'no-fly' lists, and terrorist 'watch lists'.

<u>**What Information is Shared?**</u>

**WFG DOES NOT SELL any of your information to non-affiliated companies for marketing or any other purpose.**

However, some of the same information <u>does get shared</u> with persons inside and outside the WFG Family in order to facilitate and complete your transaction.

For example:

However, some of the same information <u>does get shared</u> with persons inside and outside the WFG Family in order to facilitate and complete current and future transactions.

For example:

- Information, draft documents, and closing costs will pass back and forth between WFG and your mortgage broker and lender to facilitate your transaction.
- Information, including purchase agreements and amendments, will pass back and forth between WFG and the real estate agents and brokers, the mortgage brokers and lenders, the lawyers and accountants, and others involved in facilitating the transaction.
- WFG may order property searches and examinations from title searchers, abstractors and title plants.
- WFG may use third parties to obtain tax information, lien information, payoff information, and condominium or homeowners' association information.
- Third parties may be engaged to prepare documents in connection with your transaction.
- Surveys, appraisals, and inspections may be ordered.
- Within the WFG Family of companies, we may divide up the work to handle each closing in the most efficient manner possible and to meet specific legal and licensing requirements. Certain parts of your closing (for example a search or disbursement) may be handled by another division or company within the WFG Family.

- When it is time for signatures, your complete closing package may be sent to a notary, remote online notary, or notary service company who will arrange to meet with you to sign documents. The notary will, in turn, send signed copies back to us along with copies of your driver's license or other identity documents, usually by mail, UPS, Federal Express or another courier service.
- Your deed, mortgage and other documents required to perfect title will be recorded with the local recorder of deeds.
- In some cases, we use an outside service to coordinate the recording or electronic-recording of those instruments, and they will receive copies of your deeds, mortgages and other recordable documents to process, scan and send on to the recording office.
- Information within your title policy may be shared with WFG National Title Insurance Company title policy issuing agents to facilitate future financial transactions involving your property.
- Various government agencies get involved. The law requires us to provide certain information to the IRS, the U.S. Department of the Treasury, local and state tax authorities, and other regulatory and governmental agencies.
- **WFG title policy issuing agents only**: personal information provided by you may be shared with a third party for the purposes of facilitating training to obtain CE/CLE credits.

You have a choice in the selection of a mortgage broker, lender, real estate broker or agent and others that make up your 'transaction team.' Information flows to and from the members of the transaction team you have selected to facilitate an efficient transaction for you.

When WFG selects and engages a third party provider, we limit the scope of the information shared with that third party to the information reasonably necessary for that service provider to provide the requested services. With most, we have entered into agreements in which they expressly commit to maintain a WFG customer's information in strict confidence and use the information only for purposes of providing the requested services, clearing title, preventing fraud and addressing claims under our title insurance policies.

## How does WFG use your Information?

We may use your personal information in a variety of ways, including but not limited to:

- Provide the products, services and title insurance you have requested, and to close and facilitate your transaction.
- Provide and use historic transaction information to facilitate future financial transactions.
- Coordinate and manage the appraisal process.
- Handle a claim or provide other services relating to your title insurance policies.
- Create, manage, and maintain your account.
- Operate and improve WFG's applications and websites, including WFG MyHome®, WFG's secure communication and transaction portal. Your information is used for access management, payment processing, site administration, internal operations, troubleshooting, data analysis, testing, research, and for statistical purposes.
- Respond to your requests, feedback or inquiries.
- Comply with laws, regulations, and other legal requirements.
- Comply with relevant industry standards and our policies, including managing WFG's risk profile through reinsurance.
- Protect and enforce your rights and the rights of other users against unlawful activity, including identity theft and fraud.
- Protect and enforce our collective rights arising under any agreements entered into between WFG and you or any other third party.
- Protect the integrity and maintain security of our applications, websites, and products.
- Operate, evaluate, and improve our business.
- Provide you with information about products, services, and promotions from WFG or third parties that may interest you.
- **WFG title policy issuing agents only**: Provide you with a training platform to obtain CE/CLE credits

## How Do We Store and Protect Your Personal Information?

Although no system can guarantee the complete security of your personal information, we will use our best efforts to maintain commercially reasonable technical, organizational, and physical safeguards, consistent with applicable law, to protect your personal information and our systems and sites from malicious intrusions or hacking.

## How Long Do We Keep Your Personal Information?

We keep your personal information for as long as necessary to comply with the purpose for which it was collected, our business needs, and our legal and regulatory obligations. We may store some personal information indefinitely. If we dispose of your personal information, we will do so in a way that is secure and appropriate to the nature of the information subject to disposal.

## Computer Information

When you access a WFG website, or communicate with us by e-mail, we may automatically collect and store more information than you are expressly providing when you fill out a survey or send an email.   This may include:

- Your IP Address.
- Your email address, your alias and, social media handles.
- The type of browser and operating system you use.
- The time of your visit.
- The pages of our site you visit.
- Cookies.

In order to provide you with customized service, we make use of Web browser cookies. Cookies are files that help us identify your computer and personalize your online experience. You may disable cookies on your computer, but you may not be able to download online documents or access certain websites unless cookies are enabled.

The technical information we collect is used for administrative and technical purposes and to prevent fraud and provide identity verification. For instance, we may use it to count the number of visitors to our website and determine the most popular pages. We may also use it to review types of technology you are using, determine which link brought you to our website, assess how our advertisements on other websites are working, help with maintenance, and improve our customers' experience.

We may compare information gathered on previous visits to verify that we are interacting with the same parties and not a potential imposter.

If we ask you to fill out any forms or surveys, we will use the information we receive only for the specific purposes indicated in those forms or surveys.

The information you and your transaction team send us in emails or attached to an email, or provide through any of our online tools, is used for purposes of providing title, escrow and appraisal management services and used for the purposes described above.

In addition to the above, if you use an eClosing platform to sign your real estate transaction additional information may be collected. This may include:

- Your IP address.
- Your location.
- Your email address and your alias.
- The type of browser and operating system you use.
- The time of your visit.
- Your biometrics.
- Your image.
- Video recording of your transaction signing.
- Transaction metadata.
- Cookies.

## Links to Third Party Sites

Our Applications and Websites may contain links to third-party websites and services. Please note that these links are provided for your convenience and information, and the websites and services may operate independently from us and have their own privacy policies or notices, which we strongly suggest you review. This Privacy Notice applies to WFG's applications and websites only.

**Do Not Track**

Because there is not an industry-standard process or defined criteria to permit a user to opt-out of tracking their online activities ("Do Not Track"), our websites do not currently change the way they operate based upon detection of a Do Not Track or similar signal. Likewise, we cannot assure that third parties are not able to collect information about your online activities on WFG websites or applications.

**Social Media Integration**

Our applications, websites, and products contain links to and from social media platforms. You may choose to connect to us through a social media platform, such as Facebook, Twitter, Google, etc. When you do, we may collect from the social media platform additional information from or about you, such as your screen names, profile picture, contact information, contact list, and the profile pictures of your contacts. The social media platforms may also collect information from you.

When you click on a social plug-in, such as Facebook's "Like" button, Twitter's "tweet" button, or the Google+, that particular social network's plug-in will be activated and your browser will directly connect to that provider's servers. Your action in clicking on the social plug-in causes information to be passed to the social media platform.

We do not have control over the collection, use and sharing practices of social media platforms. We therefore encourage you to review their usage and disclosure policies and practices, including their data security practices, before using social media platforms.

**How Can You "Opt-Out?"**

We do not sell your information; therefore there is no need to opt-out of such reselling.  Under various laws, you can opt-out of the sharing of your information for more narrow purposes.  For additional detail, consult the Links under the "Legal" Notices attached below.

**The "Legal" Notices**

To comply with various federal and state laws, we are required to provide more complete legal notices and disclosures – see links below. The state-specific statutes referenced therein may also give residents of those states additional rights and remedies.

**Privacy Notice for California Residents -** https://national.wfgnationaltitle.com/privacy-notice-california

**Privacy Notice for Oregon Residents -** https://national.wfgnationaltitle.com/privacy-notice-oregon

**How to Contact Us**

If you have any questions about WFG's privacy notice or how we protect your information, please contact WFG:

- By email: Consumerprivacy@willistonfinancial.com
- By telephone: 833-451-5718
- By fax: 503-974-9596
- By mail: 12909 SW 68th Pkwy, Suite 350, Portland, OR 97223

**WFG FAMILY**
WILLISTON FINANCIAL GROUP LLC
WFG NATIONAL TITLE INSURANCE COMPANY
WFG LENDER SERVICES, LLC
WFGLS TITLE AGENCY OF UTAH, LLC
WFG NATIONAL TITLE COMPANY OF WASHINGTON, LLC
WFG NATIONAL TITLE COMPANY OF CALIFORNIA
WFG NATIONAL TITLE COMPANY OF TEXAS, LLC D/B/A WFG NATIONAL TITLE COMPANY
UNIVERSAL TITLE PARTNERS, LLC
VALUTRUST SOLUTIONS, LLC
MYHOME, A WILLISTON FINANCIAL GROUP COMPANY, LLC (formerly known as WILLISTON ENTERPRISE SOLUTIONS & TECHNOLOGY, LLC)
WFG NATIONAL TITLE COMPANY OF CLARK COUNTY, WA, LLC, D/B/A WFG NATIONAL TITLE

Rev 12.20.2022

Rev. 12/2022

| FACTS | WHAT DOES WILLISTON FINANCIAL GROUP DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and other government identification information<br>• Your name, address, phone, and email<br>• Information about the property, any liens and restrictions<br>• Financial Information including credit history and other debt<br>• Financial account information, including wire transfer instructions. |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Williston Financial Group chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Williston Financial Group share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes—such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes—to offer our products and services to you | Yes | No |
| For joint marketing with other financial companies | No | We don't share |
| For our affiliates' everyday business purposes—information about your transactions and experiences | Yes | No |
| For our affiliates' everyday business purposes—information about your creditworthiness | No | We don't share |
| For our affiliates to market to you | No | We don't share |
| For nonaffiliates to market to you | No | We don't share |

| To limit our sharing | • Call 833-451-5718—our menu will prompt you through your choice(s)<br>• Visit us online: http://bit.ly/WFGsConsumerPrivacyInformationRequestPage or e-mailing us at consumerprivacy@willistonfinancial.com<br>• Mail the form below<br><br>Please note:<br><br>If you are a new customer, we can begin sharing your information from the date we sent this notice. When you are no longer our customer, we continue to share your information as described in this notice.<br>However, you can contact us at any time to limit our sharing. |
|---|---|
| Questions? | Call 833-451-5718 or Email consumerprivacy@willistonfinancial.com |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| Mail-In Form | |
|---|---|
| If you have a joint policy, your choices will apply to everyone on your account. | Mark any/all you want to limit:<br>[ ]  Do not share information about my creditworthiness with your affiliates for their everyday business purposes.<br>[ ]  Do not allow your affiliates to use my personal information to market to me.<br>[ ]  Do not share my personal information with nonaffiliates to market their products and services to me. |

| Name | | Mail to: |
|---|---|---|
| Address | | Williston Financial Group |
| City, State, Zip | | PRIVACY DEPT |
| File Number | | 12909 SW 68th Pkwy, #350 |
| | | Portland, OR 97223 |

Page 2

| **Who we are** | |
| --- | --- |
| Who is providing this notice | Williston Financial Group, LLC and its affiliates and subsidiaries as listed below: |

| **What we do** | |
| --- | --- |
| How does Williston Financial Group protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.  We limit access to your information to employees that need to use the information to process or protect transaction. We take industry standard (IPSEC) measures to protect against malicious intrusions or hacking |
| How does Williston Financial Group collect my personal information? | We collect your personal information, for example, when you<br>• Apply for insurance<br>• Engage us to provide appraisal, title and escrow services<br>• Give us your contact information<br>• Provide your mortgage information<br>• Show your driver's license<br><br>We also collect your personal information from others, such as real estate agents and brokers, mortgage brokers, lenders, credit bureaus, affiliates, and others |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br>• sharing for affiliates' everyday business purposes— information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your policy. |

| **Definitions** | |
| --- | --- |
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><br>Our affiliates include companies with a common corporate identity, including those listed below. |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><br>Nonaffilliates we share with can include real estate agents and brokers, mortgage brokers, lenders, appraisers, abstractors and title searchers and others as appropriate to facilitate your transaction. |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>Williston Financial Group does not jointly market. |

| **Other important information** |
| --- |
| As a resident or citizen of certain states, we may have to provide additional state specific privacy notices and you may have rights other than as set forth above.  The links below will provide state specific information:<br><br>**Privacy Notice for California Residents -** https://national.wfgnationaltitle.com/privacy-notice-california<br>**Privacy Notice for Oregon Residents -** https://national.wfgnationaltitle.com/privacy-notice-oregon |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

11260 Overland Avenue, Ste. 14G, Culver City, CA 90230

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 09/23/2025   , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Counsel for Debtor(s): Michael Jay Berger, michael.berger@bankruptcypower.com
Attorney for US Trustee: Dare Law, dare.law@usdoj.gov
U.S. Trustee: ustpregion16.la.ecf@usdoj.gov
Honorable Judge Neil Bason: Chambers_NBason@cacb.uscourts.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 09/23/2025   , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Jamie Mazur, 1811 Bel Air Road, Los Angeles, CA 90077
Hon. Neil W. Bason, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1552 / Courtroom 1545, Los Angeles, CA 90012
U.S. Bank National Association, Bankruptcy Department, P.O. Box 108, St. Louis, MO 63166-0108

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 09/23/2025 | Bruce G. Landau, Esq. | *Bruce G. Landau* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                              Page 12                              **F 4001-1.RFS.RP.MOTION**

# CONTINUATION PAGE

| Debtor: Jaime Mazur | Bk Case: 2:25-bk-10181-NB |
|---|---|
| | |

Jamie A. Mazur
101 Ocean Ave #E701
Santa Monica, CA 90402

Jamie Mazur
1935 East 7th Street
Los Angeles, CA 90021

Jonathan H Greene, PHD
1749 S Wooster St
Los Angeles, CA 90035

Finance California
C/o Steven C. Huskey, Esq.
Epport, Richman & Robbins, LLP
1875 Century Park East, Suite 800
Los Angeles, CA 90067

Finance California
Attn: Jason Wiener
15604 Vandorf Place
Encino, CA 91436

The June Foundation, a California Corporation
C/o Finance California Gerald Wiener, CEO
15604 Vandorf Place
Encino, CA 91436

State of California Franchise Tax Board
C/o Special Procedures Section
PO Box 2952
Sacramento CA 95812-2952

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

## 20 Largest Unsecured Creditors

California Dept. of Tax and Fee Administration
Collection Support Bureau MIC 29
P.O. Box 942879
Sacramento, CA 94279-0029

Capital One Auto Finance
Attn: Bankruptcy
7933 Preston Rd
Plano, TX 75024

Capital One Auto Finance a Division of Capital On
4515 N. Sante Fe Ave., Dept APS
 Oklahoma City, OK 73118

Department of Water and Power
City of Los Angeles Attn: Bankruptcy
P.O. Box 51111
Los Angeles, CA 90051-5700

Discover Bank
P.O. Box 3025
New Albany, OH 43054-3025

Finance California
c/o Landau & Landau, Attn: Bruce G. Landau Esq.
11260 Overland Ave, Unit 14 G
Culver City, CA 90230

Finance California
1801 Century Park E.
Los Angeles, CA 90067

Franchise Tax
Bankruptcy Section MS A340
P.O. Box 2952
Sacramento, CA 95812-2952

Franchise Tax Board
Bankruptcy Section MS A340
P.O. Box 2952
Sacramento, CA 95812-2952

Goldman Sachs Bank USA
Attn: Bankruptcy
P.O. Box 70379

Philadelphia, PA 19176

IRS
P.O. Box 7346
Philadelphia, PA 19101

LADWP
111 North Hope Street
Los Angeles, CA 90012

U.S. Bank National Association
Bankruptcy Department
P.O. Box 108
Sait Louis, MO 63166-0108

U.S. Bank National Association, et al.
323 5th Street
Eureka, CA 95501

Us Bk Cacs
Attn: Bankruptcy
P.O. Box 5229
Cincinnati, OH 45201

Verizon by AIS InfoSource LP as agent
4515 Sante Fe Ave
Oklahoma City, OK 73118

Wells Fargo Bank N.A.
Attn: Bankruptcy
1 Home Campus Mac X2303-01a, 3rd Floor
Des Moines, IA 50328

Wells Fargo Bank N.A.
P.O. Box 10438, MAC F8235-02F
Des Moines, IA 5036-0438

Wells Fargo Bank N.A.,
Wells Fargo Card Services
P.O. Box 10438, MAC F8235-02F
Des Moines, IA 5036-0438

Wells Fargo Jewelry Advantage
Attn: Bankruptcy
P.O. Box 10438, MAC F8235-02F
Des Moines, IA 5036-0438